## ORDER OF RAILWAY CONDUCTORS OF AMERICA ET AL. *v.* PENNSYLVANIA RAILROAD CO. ET AL.

No. 200.   Argued November 15, 1944.—Decided December 11, 1944.

*Mr. Rufus G. Poole,* with whom *Messrs. William A. Clineburg* and *V. C. Shuttleworth* were on the brief, for petitioners.

*Mr. John B. Prizer,* with whom *Messrs. John Dickinson* and *R. Aubrey Bogley* were on the brief, for the Pennsylvania Railroad Co., and *Mr. Bernard M. Savage* for the Brotherhood of Railroad Trainmen, respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This is a suit for a declaratory judgment and for an injunction brought by the Order of Railway Conductors of America, an unincorporated association of railway employes, against the National Mediation Board, two of its members, the Pennsylvania Railroad, and a subsidiary railroad company, and the Brotherhood of Railroad Trainmen, an unincorporated association of railway employes. For the sake of brevity, the plaintiffs will be called "plaintiff"; the National Mediation Board and its members "board"; the two railroads "railroad," and the Brotherhood of Railroad Trainmen "trainmen."

The complaint, after stating the capacity of the parties, makes the following allegations, which, as will appear, are, for purposes of decision, to be taken as true. The plaintiff is, and for years has been, the accredited representative and bargaining agent for the craft of road conductors of the railroad, and the trainmen the representative and agent of road brakemen, yard conductors, yard brakemen, baggagemen and switchtenders. The two associations have jointly negotiated contracts with the railroad, and such a contract was jointly negotiated effective April 1, 1927, and remains in force with respect to road conductors, except as modified concerning rates of pay. April 18, 1941, the railroad notified the two unions of its desire to alter the contract and, pursuant to the notice, the accredited representatives of the parties met in conference to adjust classifications of conductors, rates of pay for them, and the control of the so-called "extra board" for conductors. Due to disagreements between the two unions and the concurrence by the railroad in the attitude of the trainmen, representatives of the conductors withdrew from the joint negotiation and served notice of withdrawal on the railroad. Two weeks thereafter the railroad and the

trainmen signed a new agreement covering the matters under consideration. Certain provisions agreed upon between the railroad and the trainmen were in violation of sections of the Railway Labor Act and, therefore, void, and the prior agreement between the conductors and the railroad remained in force, but, nevertheless, the railroad, since execution of the new agreement with the trainmen, has refused to bargain with the plaintiff.

The railroad and the trainmen conspired and confederated in an unlawful programme designed to embarrass, discredit, and weaken the plaintiff and strengthen the trainmen and thus to influence, coerce, and interfere with the craft of road conductors in their choice of a bargaining representative, and the railroad and trainmen were guilty of acts intended, and effective, to that end. September 23, 1942, the trainmen filed with the board a request to be certified as the bargaining representative of the craft of road conductors.

The plaintiff protested to the board against the holding of an election, charging that the railroad was interfering with, influencing, and coercing conductors by unlawfully bargaining with the trainmen with respect to road conductors' working conditions, in breach of the existing contract between the plaintiff and the railroad. The board illegally and wrongfully ruled that it had no jurisdiction to consider the charges, ordered an election to determine the bargaining representative for road conductors, held such election, and issued a certification based thereon that trainmen was the authorized representative of the road conductors, which election and certification are illegal, null and void, *inter alia,* because the board refused to perform its duties by investigating the alleged unfair labor practices.

Based on the foregoing allegations, the relief demanded was (1) that the election and certification be annulled, vacated, and set aside; (2) (a) that the board and its mem-

bers be restrained from holding any election for a bargaining representative of road conductors until it shall have considered the unfair labor practices and found that they do not amount to interference, influence or coercion, and that (b), in the alternative, the court declare the practices complained of constitute unlawful interference or coercion of the craft of road conductors, and restrain the board from holding an election until the board determines, after investigation and hearing, that such interference, influence or coercion has ceased; (3) (4) that it be declared that certain paragraphs of the agreement negotiated by the railroad and the trainmen were not negotiated with the accredited representative of the road conductors and were illegal infringements upon the exclusive right of the plaintiff, as accredited bargaining agent, to represent the conductors; (5) that it be declared that the plaintiff, as such representative, has the exclusive right to negotiate in collective bargaining for the conductors; (6) that the railroad be permanently enjoined from bargaining or making or maintaining agreements with trainmen, or any other union except the plaintiff, on behalf of road conductors so long as the plaintiff is the accredited representative of that class; (7) that the railroad be directed to negotiate and bargain with the plaintiff, as representative of the road conductors, so long as the plaintiff remains such representative; (8) that the railroad be enjoined from directly or indirectly coercing, influencing, or interfering with the craft of road conductors and their choice of a representative under the Railway Labor Act; (9) further relief.

After answers by the defendants the plaintiff moved for summary judgment on the pleadings and an affidavit which added nothing to the matters appearing in the pleadings. The District Court, though of opinion that there was no genuine issue, as to any material fact, presented under the motion for judgment, nevertheless de-

nied the motion and also dismissed the complaint, because it held that the facts alleged and admitted failed to establish a cause of action.

The plaintiff appealed to the Court of Appeals for the District of Columbia. Each appellee filed a motion to dismiss on the ground that the court lacked jurisdiction. The motions were grounded on the decisions in *Switchmen's Union* v. *Mediation Board,* 320 U. S. 297 and related cases,[1] which were announced after the appeal had been taken. The plaintiff answered the motions. The court, being of opinion that, under the rulings in the *Switchmen's Union* case and others decided at the same term,[2] it was without jurisdiction of the controversy, dismissed the appeal.[3]

The plaintiff applied to this court for certiorari to review the judgment dismissing the trainmen and the railroad. It did not seek review of the judgment granting the board's motion, and dismissing the board. That judgment is now final and beyond review here.

The plaintiff based its claims to relief on § 2 Third of the Railway Labor Act, which bans interference, influence, or coercion by either party in respect of designation of representatives by the other. The board, in denying jurisdiction, evidently relied on a portion of § 2 Ninth, dealing with its function to investigate disputes concerning representation of employes, to hold elections, and to certify the authorized representative, as limiting its jurisdiction to the actual conduct of the investigation and election and precluding it from investigating prior action by any of the parties. The railroad relied upon § 2 Tenth,

---

[1] *General Committee* v. *M.-K.-T. R. Co.,* 320 U. S. 323; *General Committee* v. *Southern Pacific Co.,* 320 U. S. 338.

[2] The court cited in addition to the cases relied on by the defendants, *Brotherhood of Clerks* v. *United Transport Service Employees,* 320 U. S. 715.

[3] 141 F. 2d 366.

which it asserts creates remedies for violation of § 2 Third that are exclusive of all other remedies. The relevant portions of the sections thus relied on are quoted in the margin.[4] The contentions so made raise important questions, but we express no opinion on them since, for reasons about to be stated, we hold that we do not reach them within the framework of this case.

The first and second prayers for relief seek the annulment and cancellation of the board's certification and an injunction against board action. Plainly no such relief should be granted, if at all, in the absence of the board as a party. Because of the failure to appeal from the order dismissing it, the board is not, and never can be, a party to this cause, either here or in the courts below.

The third, fourth and fifth prayers in effect request a declaration that the plaintiff is the representative of the

---

[4] Sec. 2 Third. "Representatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives. . . ." 45 U. S. C. § 152 Third.

Sec. 2 Ninth. ". . . the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier. . . ." 45 U. S. C. § 152 Ninth.

Sec. 2 Tenth. "The willful failure or refusal of any carrier, its officers or agents, to comply with the terms of the third, fourth, fifth, seventh, or eighth paragraph of this section shall be a misdemeanor . . . It shall be the duty of any district attorney of the United States to whom any duly designated representative of a carrier's employees may apply to institute in the proper court and to prosecute under the direction of the Attorney General of the United States, all necessary proceedings for the enforcement of the provisions of this section, and for the punishment of all violations thereof . . ." 45 U. S. C. § 152 Tenth.

road conductors for bargaining notwithstanding the board's certification to the contrary. Since the election and certification could not be annulled without making the board a party, that result cannot be obtained by indirection by having the court substitute itself for the board, or declare, independently of the board, who is the accredited representative of the plaintiff.

The sixth, seventh, and eighth prayers have a similar object. They ask an injunction to prevent the railroad from bargaining with trainmen and a mandatory injunction that it shall bargain with the plaintiff as representative of road conductors. Such a decree would be in the teeth of the board's certification. To grant such a decree would seem to be in contravention of the *Switchmen's Union* case, *supra,* and in any event such action should not be taken in the absence of the board.

The eighth prayer seeks an injunction against future acts of the railroad coercive of the class of road conductors in choosing a bargaining representative. As we have seen, an election has been held, a representative chosen and the choice certified by the board. No election is now pending and there is no averment in the bill that an election is about to be held or that the railroad is about to commit any act in violation of the proscription of § 2 Third. All that the bill does is to recite what the railroad has heretofore done in advance of the election already held and the certification based upon it. No case is stated requiring the entry of the injunction prayed.

The arguments in this case covered a wide range and embodied suggestions as to possible remedies should the board act or refuse to act on charges of coercion antecedent to election and on possible remedies to deprive an employer guilty of influence and coercion of the benefits of the election and the board's certification.

We do not reach the question reserved in *General Committee* v. *M.-K.-T. R. Co.,* 320 U. S. 323, 336, note 12,

whether the courts may afford relief where the board refuses or fails to perform a function delegated to it by Congress, since the board is not a party. Neither the pleadings nor the prayers disclose a situation in which the question of the availability of such remedies antecedent to, or subsequent to, the election or certification need be discussed or decided.

The writ is accordingly dismissed.

MR. JUSTICE RUTLEDGE concurs in the result.