Jane HARDY, Vito Joseph Figlioli, Adolph J. Raynis, Robert Mautte, John F. Gallagher, Ernest L. Davis, Albert A. Fusco, Catherine I. McByrne, Virginia A. McKee, on their own behalf and on behalf of others similarly situated, Plaintiffs,

v.

James D. ROSSELL, Regional Director of the United States Civil Service Commission, and/or James P. Googe, as Regional Director and Lawrence H. Baer, as Acting Regional Director, his successors in such position; Aleer J. Couri, United States Appraiser of Merchandise, Customs District No. 10; and Robert W. Dill, Collector of Customs of the Port of New York, Customs District No. 10, Defendants.

United States District Court
S. D. New York.
March 29, 1955.

**262**

Joseph C. Kenney, New York City, for plaintiffs.

J. Edward Lumbard, U. S. Atty., for the Southern Dist. of N. Y., New York City, Harold J. Raby, Asst. U. S. Atty., New York City, for defendants.

RYAN, District Judge.

These motions were brought on by an order to show cause why the defendants should not be restrained from effecting certain downgradings in the offices of the Collector of Customs of the Port of New York and the Appraiser of Merchandise of the Port of New York. The actions of the defendants have been stayed pending determination of this motion. Defendants have cross-moved for summary judgment.

Plaintiffs seek an injunction *pendente lite* to prevent the defendants from carrying out the downgradings until "the final determination of the matters set forth in the Complaint herein." Plaintiffs sue in a representative capacity, on behalf of themselves and others similarly situated. On this motion we will not consider whether this suit is appropriately brought as a class action, assuming rather that plaintiffs can do so.

It affirmatively appears that at least the named plaintiffs have filed timely administrative appeals to the United States Civil Service Commission.[1] We will therefore assume further that all of the plaintiffs are presently pursuing their administrative remedies.

One more preliminary matter: this motion has been broadly drawn. It seeks to enjoin all administrative action until this Court can pass upon the merits of the complaint. The motion could have been more narrowly drafted so as to provide only that plaintiffs be held in *status quo* until the determination and disposition of all administrative appeals. We have considered plaintiffs' contentions as if they had asked for either or both forms of relief.

Briefly the facts are these: during the year 1953 and thereafter the Civil Service Commission conducted a position classification survey in the offices of the Collector of Customs of the Port of New York and the Appraiser of Merchandise of the Port of New York in which offices plaintiffs are employed. As a result of this survey plaintiffs were downgraded in their government positions, certification thereof being made.

Two grounds are advocated as bases for relief. The first is that irreparable damage will result to plaintiffs in that they will suffer salary reductions and lose many valuable rights of government tenure, among which the loss of right to promotions within grade, loss of right to promotions to higher grade and loss

1. Apparently the administrative procedure being followed by plaintiffs is pursuant to 5 Code Fed.Regs. Part 22, carried over and made applicable in cases of demotion by 5 Code Fed.Regs. § 9.105(3).

of mandatory increments to their salaries. These rights, plaintiffs contend, could not be restored to them even if they prevail before the Commission or subsequently before the courts. Plaintiffs' second contention is that this Court should now determine the issues since the administrative action was clearly illegal, in that the Commission did not adhere to statutory requirements and establish proper standards for the reclassified positions.

■■ At the outset it is clear that plaintiffs' available administrative remedies have not been exhausted.[2] Administrative appeals are pending. An attempt is here being made to circumvent these appeals by alleging irreparable injury, but it is not every injury that will admit of judicial intervention into the administrative processes. Courts cannot inject themselves even where a petitioner asserts that resort to the administrative tribunal will deprive him of a constitutional right, unless it can be shown that the administrative procedure itself denies due process of law.[3] The paramount consideration must be the nature of the injury which the plaintiffs will suffer and the reasonableness of requiring them to bear that injury in light of all the circumstances.[4] The injuries plaintiffs fear are indeed serious to them involving their prestige and very standard of livelihood. To allow them to bear

this burden cannot be regarded as a normal incident or expectation of government employment.[5] But we must be mindful that at least one consideration basic to the exhaustion doctrine is that, as Mr. Justice Holmes declared some years ago, "even fundamental questions should be determined in an orderly way."[6]

■ What impels our determination here, however, is that plaintiffs will not suffer *any* injury if they prevail upon administrative appeal. 5 Code Fed.Regs. § 56.1(c) (2) (Cum.Supp.1954).[7] Under this Regulation if the Commission on appeal determines plaintiffs were erroneously downgraded then the plaintiffs have the right to full restoration of rights and back pay.

On the contrary it is contended that by virtue of three decisions of the Comptroller General of the United States the Civil Service Commission lacks the authority to make full restoration.[8] These decisions are inapplicable to the case at bar, firstly, because they did not involve the Classification Act, 5 U.S.C.A. § 1071 et seq. Secondly, the Civil Service Commission is empowered under the Classification Act "to issue such regulations as may be necessary" to administer the Act.[9] Regulations have been promulgated thereunder which provide for restoration of plaintiffs' benefits, if they

2. Shanks Village Committee Against Rent Increases v. Cary, 2 Cir., 1952, 197 F.2d 212.

3. Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796; Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834.

4. See Macauley v. Waterman Steamship Corp., 1945, 327 U.S. 540, 545, 66 S.Ct. 712, 90 L.Ed. 839.

5. See Twentieth Century Airlines, Inc., v. Ryan, 1953, 74 S.Ct. 8, 11.

6. See United States v. Sing Tuck, 1904, 194 U.S. 161, 168, 24 S.Ct. 621, 623, 48 L.Ed. 917.

7. This section provides:

"(c) Classification decisions resulting from an appeal will take effect not earlier than the date of decision on the appeal and not later than the beginning of the fourth pay period following the date of decision if made by a department, or the receipt of the decision in the department if made by the Commission, unless * * * (2) the original appeal was filed within thirty days after receipt of written notice of action lowering the grade of the position and the corrective action raises the grade, in which case the effective date shall be effective retroactively to the date of the appealed action."

8. 33 Comp.Gen. 192 (1953); 29 Comp.Gen. 108 (1949); 28 Comp.Gen. 200 (1948).

9. 5 U.S.C.A. § 1072.

have been improperly deprived of them.[10] If it is administratively determined that plaintiffs have been wronged, the Civil Service Commission certifies the reversal of their position to the appropriate department, thereby placing the affected employees in their proper grade. "(S)uch certificate shall be binding on all administrative, certifying, *pay roll*, *disbursing*, and *accounting* officers of the Government."[11] (Emphasis added.) Under 5 U.S.C.A. § 1101(b) any employee or employees affected may at any time request the Commission to exercise the authority it has under § 1101(a). Sections 1101 and 1103 apply with equal vigor to initial determinations of the Commission as well as to reversals by the Commission of its initial determinations.[12] Thirdly, the aforementioned decisions are inapplicable because defendants have submitted a communication from the Civil Service Commission to the effect that the Comptroller General has approved the Commission's Regulation in 5 Code Fed.Regs. § 36.1 (Cum.Supp. 1954).[13] And fourthly, there is recent authority contrary to the Comptroller General's view.[14]

It may be argued that irreparable harm will result to those employees whose responsibilities were increased after the date of the survey. The last sentence of 5 Code Fed.Regs. § 36.1(c) set out below[15] might lead to this conclusion. However though the added responsibilities were assigned to these plaintiffs after the date of the survey it was before the actual certifications of downgrading. No reallocation can become operative until certifications are made. Therefore the date of "adverse action" spoken of in the Regulation must have reference to the date of certification and not the survey date, and this part of the Regulation is inapplicable to plaintiffs at bar. If they are successful before the Commission they are nevertheless entitled to retroactive restoration of rights and pay.

For the foregoing reasons we find plaintiffs' first contention of irreparable damage to be without substance.

Plaintiffs cite Shargel v. Hollis[16] in their support. However in that case Judge Dimock held that the plaintiff had no administrative remedy, hence could not exhaust what did not exist, and thus the exhaustion doctrine had no applicability. Here the plaintiffs have an administrative remedy which they are presently pursuing and which can give them all that they seek.

Plaintiffs' second contention is that this Court should now intervene because the administrative action complained of was clearly illegal. Stemming from a dictum in Order of Railway Conductors of America v. Pitney,[17] there has arisen a line of cases holding that where the administrative action is "clearly illegal" the need to exhaust administrative rem-

---

10. 5 Code Fed.Regs. § 36.1(c) (2) (Cum. Supp.1954).

11. 5 U.S.C.A. §§ 1101(a), 1103.

12. Compare 5 U.S.C.A. § 863.

13. " * * * (A)ny employee who filed a timely appeal with Civil Service Commission would suffer no loss of pay and no loss of longevity if his classification appeal is allowed because the statutory regulation in 5 CFR 36.1 has been approved by the Comptroller General of the United States and a retroactive restoration under that regulation restores longevity as well as pay * * *
 "U S Civil Service Commission"

14. Smith v. United States, 1954, 127 Ct.Cl. 706, 119 F.Supp. 200; Goodwin v. United States, 1954, 127 Ct.Cl. 417, 118 F.Supp. 369.

15. "If the grade is raised on appeal because of duties and responsibilities which were added to the position after the date of adverse action, the raise in grade cannot be made retroactive."

16. D.C.S.D.N.Y.1954, 120 F.Supp. 814.

17. 1946, 326 U.S. 561, 566, 66 S.Ct. 322, 324, 90 L.Ed. 318—"where the statute is so obviously violated * * * a court of equity could, in a proper case, intervene".

edies is vitiated.[18] Although on the face of it this principle has alluring appeal we cannot agree 'with it as a hard and fast "rule of law". First of all if the administrative action is clearly illegal it will in all likelihood be overturned on appeal within the administrative agency. Within the genius of our government courts and administrative tribunals operate within their respective spheres and frequently both are charged with the power to vindicate alleged administrative wrongs.[19] But where expert judgment is called for—and the operation of a large enterprise, private or public, indeed involves specialized knowledge—administrative agencies may well be better equipped to determine issues of the sort presented at bar.[20] Judicial withdrawal at this stage in the proceeding simply means that the courts will wait for complete and mature administrative reflection, the screening out of its errors, and the utilization of its special competence.

It may be argued that if administrative action is "clearly illegal" and if in any event it will be overturned in the process of administrative review, we should at the start save the parties the trouble and expense of pursuing their administrative remedies. Again the simplicity of the statement is deceiving. One of the basic purposes of the doctrine requiring exhaustion of administrative remedies is to give full vent to the administrative process, allowing a full record to be made, prior errors to be resolved, and for all we know at this time, eliminating any need for resort to courts, whose dockets are already jammed with litigation.[21]

In the realm of legal theory it may be that the phrase "clearly illegal" has a fixed and definite meaning but like so much other legal nomenclature when the time comes for application many difficulties are seen. What appears clearly illegal to one judge may be on the fringe of legality to another; to another, unsavory administrative action, but nevertheless the will of Congress. It must be remembered that so long as the clear illegality concept remains a hard and fast rule it will remain an avenue for alert and assiduous lawyers, anxious to protect every right and gain every advantage for their clients, to beat a premature path to the Court House with applications for restraining orders and injunctions *pendente lite,* all to the disruption of the orderly transaction of administrative business. Judicial safeguards still exist, which can be duly and properly invoked, but Congress has entrusted the fulfillment of its legislation under the Classification Act to the Civil Service Commission, and this Court should be loathe to frustrate that legislative purpose before full agency consideration and where no harm will result to plaintiffs if the agency is wrong.

An analogous situation, we believe, is one where the courts have refused to exercise their jurisdiction even though there is an alleged violation of a consti-

18. Wettre v. Hague, 1 Cir., 1948, 168 F. 2d 825; 33 Minn.L.Rev. 172 (1949); Group v. Finletter, D.C.D.C.1952, 108 F. Supp. 327; Reeber v. Rossell, D.C.S.D. N.Y.1950, 91 F.Supp. 108; See Farrell v. Moomau, D.C.N.D.Cal.1949, 85 F.Supp. 125, 127; Breiner v. Wallin, D.C.E.D.Pa. 1948, 79 F.Supp. 506, 507–508.

19. See United States v. Ruzicka, 1946, 329 U.S. 287, 295, 67 S.Ct. 207, 91 L.Ed. 290; United States v. Morgan, 1939, 307 U.S. 183, 190–191, 59 S.Ct. 795, 83 L.Ed. 1211.

20. See Natural Gas Pipeline Co. v. Slattery, 1937, 302 U.S. 300, 311, 58 S.Ct. 199, 82 L.Ed. 276; Red River Broadcasting Co., Inc. v. Federal Communications Commission, 1938, 69 App.D.C. 1, 98 F.2d 282, 287. Were the matter presented one which the agency's special competence was of no particular aid and its "expertise" not brought into play exhaustion might not then be required. Cf. Gonzales v. Williams, 1904, 192 U.S. 1, 24 S.Ct. 177, 48 L.Ed. 317.

21. See Aircraft & Diesel Equipment Corp. v. Hirsch, 1947, 331 U.S. 752, 767, 67 S. Ct. 1493, 91 L.Ed. 1796; Federal Trade Commission v. Claire Furnace Co., 1927, 274 U.S. 160, 174, 47 S.Ct. 553, 71 L.Ed . 978.

.tutional right.[22] Less reason appears where the allegation is that the administrative action was illegal. Even more analogous are situations where courts have refused to intervene upon petitioner's charge that the agency was acting beyond its jurisdiction.[23] It is our conclusion that intervention solely on the basis of an allegation of clear illegality is insufficient to motivate judicial cognizance of matters still in the administrative process.

■ At best we feel that clearly illegal administrative action is but one of the factors to be considered in determining whether a court should prematurely intervene in the administrative process. Here where it appears that if the agency is wrong plaintiffs will suffer no harm, we do not believe this factor should enter our consideration. Believing this analysis to be correct, nevertheless we are confronted with the contrary view of a higher authority, namely that.of the Court of Appeals for the First Circuit.[24] In the absence of an opposing view from our own Court of Appeals we feel obliged to abide by the conclusion reached in the First Circuit. For this reason we will examine the administrative action by which plaintiffs claim they. are aggrieved, reiterating that the only matter open for judicial scrutiny at 'this time is whether the Civil Service Commission clearly violated the Classification Act in downgrading plaintiffs. So to speak, we

are examining only the ultra violet of the spectrum, and nothing more.

■ Plaintiffs' Summary of Argument states "that the survey was inadequate and resulted in the application of improper classifications to the positions surveyed." The complaint alleges that the "purported survey * * * was incomplete and inaccurate in its performance, was arbitrary, and was invalid and not in conformity with the Statutes under which it was purportedly conducted, or with the standards provided for civil service classifications."[25] The only particularized charge of illegality is that the Civil Service Commission was required to prepare separate standards for the position of Clerk in the Office of Collector of Customs and did not do so. We think this contention is without foundation on this motion. Standards for clerks generally were published. Furthermore standards were published for Customs Entry Clerk (Auxiliary Entries), Customs Entry Clerk Supervisors (Auxiliary Entries) and Customs Entry Clerk (Informal Series). We see no clear illegality here. '

■ What plaintiffs seem to be seeking is the substitution of our judgment for that of the Commission, and this we cannot do certainly at this time. Furthermore, it is a far cry from saying a given determination was erroneous to a holding of clear illegality. It does appear from the papers submitted on this

22. See note 3, supra.

23. Oklahoma Press Publishing Co. v. Walling, 1946, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614; Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 58 S. Ct. 459, 82 L.Ed. 638; Federal Trade Commission v. Claire Furnace Co., 1927, 274 U.S. 160, 47 S.Ct. 553, 71 L.Ed. 978; United States v. Sing Tuck, 1904, 194 U. S. 161, 24 S.Ct. 621, 48 L.Ed. 917.

24. Wettre v. Hague, 1 Cir., 1948, 168 F. 2d 825.

25. Elsewhere in the complaint it is recited:

"Twenty-Seventh: The actions and conduct of the defendants herein were in violation of the constitutional rights of the several plaintiffs herein, and of others similarly situated, and in violation of the

Statutes controlling the functions and activities of the defendants herein in their official capacities and in violation of the rights afforded said plaintiffs and others similarly situated, under the laws and Statutes of the United States applicable to persons in the classified civil service of the United States.

"Twenty-Eighth: In truth and in fact the plaintiffs herein, as well as those other persons similarly situated and affected by the action taken by the defendant Rossell and the other· defendants herein, are now carrying on duties and activities which properly conform to the grade of classified civil service of the United States in which the positions they now occupy were classified and allocated on and before the 17th day of December, 1954."

motion that standards of classification were published.[26] Those standards as far as we can determine were utilized as well as the standards enumerated in the statutory General Schedule descriptions.[27]

A desk audit was conducted to determine the duties and responsibilities entailed by each position. Interviews were had with a number of the plaintiffs herein. For those who were not personally interviewed a person holding a position with essentially the same duties and responsibilities was interviewed.[28] Before any downgradings were certified they were reviewed by the Bureau of Inspections and Classification Audits of the Civil Service Commission. Whereupon certifications were made to the departments. We cannot see any clear illegality or departure from the statutory requirements of 5 U.S.C.A. §§ 1091–1094 in this procedure, and none has been specifically pointed out to us. We wish, however, to make it absolutely clear, to prevent any future confusion on this issue, that the limit of our inquiry has been the matter of clear illegality. Beyond that limit we do not transgress.

Defendants have cross-moved for summary judgment dismissing the complaint herein.[29] The determination of this issue depends on the extent and nature of the court's jurisdiction where circumvention of administrative procedure has been unsuccessfully sought. In its genesis the doctrine of exhaustion has been regarded as an outgrowth of the rule that equity will not grant relief if there is an adequate remedy at law.[30] It has also been thought that a theory of comity was the underlying concept out of which the doctrine grew.[31] It may well be thought at this date that the doctrine has taken on an independent validity apart from its historical origin. Perhaps indicative of this is the invocation of the doctrine in cases at law.[32]

If the equity practice still prevails, a finding that administrative remedies have not been exhausted precludes judicial review, and defendants' motion must be granted for want of jurisdiction. The comity doctrine loses its full force because we are here involved with a federal administrative agency. The thrust of the comity doctrine would be felt the strongest where activities of state administrative agencies are questioned. In any event the prevailing and better rule appears to be that the District Courts have discretion generally to intervene before administrative remedies have been exhausted if a proper showing is made.[33] If this Court has discretion to intervene at all it is *a fortiori* that we have discretion to maintain jurisdiction over the cause until administrative remedies have

26. Exhibit 2—Mail and File Series; Exhibit 3—Clerk-Stenographer Series; Exhibit 4—Typist Series; Exhibit 5—Calculating Machine Operating Series; Exhibit 6—Customs Entry and Liquidating Series.

27. 5 U.S.C.A. § 1112. See Hull affidavit, page 3.

28. See Hull affidavit, page 4.

29. Rule 56, Fed.R.Civ.P. 28 U.S.C.A.

30. See Comment, Administrative Law—Exhaustion of Administrative Remedies as a Prerequisite to Judicial Review—Discretionary Treatment by Federal Courts, 44 Mich.L.Rev. 1035, 1036 (1946).

31. See Railroad & Warehouse Commission of Minnesota v. Duluth Street Railway Co., 1927, 273 U.S. 625, 628, 47 S.Ct. 489, 71 L.Ed. 807; Pacific Telephone & Telegraph Co. v. Kuykendall, 1924, 265 U.S.

196, 203, 44 S.Ct. 553, 68 L.Ed. 975; Prentis v. Atlantic Coast Line Co., 1908, 211 U.S. 210, 229, 29 S.Ct. 67, 53 L.Ed. 150; see Berger, Exhaustion of Administrative Remedies, 48 Yale L.J. 981, 984 (1939).

32. See Myers v. Bethlehem Shipbuilding Corp., 1937, 303 U.S. 41, 51, 58 S.Ct. 459, 82 L.Ed. 638 (Footnote 9).

33. Levers v. Anderson, 1945, 326 U.S. 219, 66 S.Ct. 72, 90 L.Ed. 26; see Natural Gas Pipeline Co. v. Slattery, 1937, 302 U.S. 300, 311, 58 S.Ct. 199, 82 L.Ed. 276; Commonwealth of Pennsylvania v. Williams, 1935, 294 U.S. 176, 182–183, 55 S.Ct. 380, 96 A.L.R. 1166; Montana National Bank of Billings v. Yellowstone County of Montana, 1928, 276 U.S. 499, 505, 48 S.Ct. 331, 72 L.Ed. 673; Banton v. Belt Line Railway Corp., 1925, 268 U.

been fully pursued. Defendants' motion for summary judgment is therefore denied, and the clerk is directed to continue plaintiffs' complaint on the calendar to abide the pursuit of their administrative remedies.[34]

Plaintiffs present the predicament of government employees who having served satisfactorily within grade for a length of time are faced with downgrading. Remedial legislation, now pending before the Congress[35] may well be called for, but as Mr. Justice Frankfurter has remarked:[36]

"Hardship there may well come through action of an administrative agency. But to slide from recognition of a hardship to assertion of jurisdiction is once more to assume that only the courts are the guardians of the rights and liberties of the people."

S. 413, 416–417, 45 S.Ct. 534, 69 L.Ed. 1020; United States v. Abilene & Southern Railway Co., 1924, 265 U.S. 274, 282, 44 S.Ct. 565, 68 L.Ed. 1016; Prendergast v. New York Telephone Co., 1923, 262 U. S. 43, 48, 43 S.Ct. 466, 67 L.Ed. 853; Great Northern Railway Co. v. Merchants Elevator Co., 1922, 259 U.S. 285, 290, 42 S.Ct. 477, 66 L.Ed. 943; Hollis v. Kutz, 1921, 255 U.S. 452, 454, 41 S.Ct. 371, 65 L.Ed. 727.

34. Fischer v. Haeberle, D.C.E.D.N.Y.1948, 80 F.Supp. 652.

35. See H.R. 3085, 84th Congress, 1st Session (1955).

36. See Columbia Broadcasting System, Inc., v. United States, 1942, 316 U.S. 407, 446, 62 S.Ct. 1194, 1213, 86 L.Ed. 1563.