Frank H. HILLS, Cecil LaMar, Arthur Dunkelburger, Calvin Winkler, Lloyd Barker, Alan Widener, Eual Blansett, Andrew O. Stanley, Robert W. Curry, James King, Arthur Bowland, and Cleo J. Shephard, Plaintiffs,

v.

Col. EISENHART, Col. Dalene Bailey, Col. David Daniel, Col. Robert David, Major John Desmond, Major Bruce L. Sooy, Major Leo Purseglove, Lt. Col. Bernard Passero and Sam Butturf, Defendants.

Civ. 7637.

United States District Court
N. D. California, N. D.
Nov. 15, 1957.

William L. Beeman, Vallejo, Cal., and Landis, Brody & Martin, Sacramento, Cal., for plaintiffs.

G. Joseph Bertain, Jr., Asst. U. S. Atty., Sacramento, Cal., for defendants.

HALBERT, District Judge.

This is an action for a declaratory judgment and for injunctive relief instituted by a group of civilian employees at the Travis Air Force Base for the purpose of preserving their job status free from the demotions incident to a reduction in force. The claim that their rights under Title 5 U.S.C.A. § 652 and § 863 have been impaired by certain action allegedly taken by the military officials in charge of the administration of the Travis Air Force Base.

The following facts appear from the record:

Pursuant to an order of the Defense Department reducing by 5% the amount of funds available for civilian payroll expenditures on Air Force bases, the officers in charge of the Travis Air Force Base, rather than laying off employees in the lower ranks of the civilian work force, reduced the rank and, correspondingly, the pay of certain of the civilian supervisory personnel at the base. The positions formerly occupied by the demoted civilian employees were given to military personnel. The demotion coupled with their replacement by military personnel are the operative facts which form the basis of the plaintiffs' complaint. It appears that the directive from the Department of Defense instructed the officers in charge of the base that:

"In accordance with past procedures, reduction in civilian personnel levels will be achieved without replacement by military personnel or substitution by contract operation. It is recognized that, in exceptional cases, temporary adjustments in the assignment of military and civilian personnel may be required as a matter of operational necessity. Such expedients, however, will be replaced by perma-

nent arrangements which comply with the foregoing instructions at the earliest practicable date."

Plaintiffs presented their complaint to the Regional Director of the Twelfth United States Civil Service Region in San Francisco, and were informed that the Civil Service Commission had no jurisdiction to determine the merit or lack of merit of a federal agency's decision to effectuate a reduction in force in the absence of some complaint based on a violation of the retention preference regulations (See: e.g., Title 5 C.F. R. Part 20). It was affirmatively suggested by the Regional Director in his letter to plaintiffs that they present their complaint to the United States Air Force through the commanding officer of their base.

Thereafter, and without taking any other steps, plaintiffs instituted the instant action in this Court and obtained, on October 25, 1957, an order of this Court temporarily restraining defendants from carrying out their demotion and replacement program and directing that defendants show cause why a preliminary injunction should not be issued. Defendants filed a motion to dismiss the order to show cause. The matter came on regularly for a hearing on November 12, 1957. The Court, being of the view that there was a substantial doubt as to whether there was federal jurisdiction in the case, limited the parties (The parties concurred in the Court's ruling in this regard.) in their arguments and briefs to that issue.

After careful consideration of the authorities presented by both parties, the Court is of the opinion that the action must be dismissed for want of federal jurisdiction.

■■ This is the type of action that demonstrates the need for the utmost judicial caution, for it involves the making of value judgments on matters which, traditionally, are the sole concern of other branches of the government. This policy of self-restraint has been spelled out in this manner:

"The fundamental necessity of maintaining each of the three general departments of government entirely free from the control or coercive influence, direct or indirect, of either of the others, has often been stressed and is hardly open to serious question. So much is implied in the very fact of the separation of the powers of these departments by the Constitution; and in the rule which recognizes their co-equality. The sound application of a principle that makes one master in his own house precludes him from imposing his control in the house of another who is master there." Humphrey's Executor v. United States, 295 U.S. 602, 629, 630, 55 S.Ct. 869, 874, 79 L.Ed. 1611.

In the absence of, at least, a reasonably accurate allegation of the existence of some concrete federal right, either statutory or constitutional, to juxtapose with an internal legislative or executive agency's policy pronouncement, which, assertedly, violates the right, all that can be drawn into question for judicial scrutiny is the propriety of the departmental decision alone, and this is not the kind of evaluation which it is the business of the courts to make (Cf.: Washington v. Clark, D.C., 84 F.Supp. 964, 966, 967; affirmed Washington v. McGrath, 86 U.S.App.D.C. 343, 182 F.2d 375; affirmed 341 U.S. 923, 71 S.Ct. 795, 95 L.Ed. 1356). Thus, it is fair to say that if plaintiffs in the instant case have failed to point to any substantive federal right to be vindicated by this action, then all that would remain for this Court to pass judgment upon is the discretionary decision of the Department of Defense to reduce the payroll of Air Force civilian personnel by 5%, and the discretionary decision of the Air Force officials, themselves, to implement this policy by a reduction in force resulting in the demotion of plaintiffs. A claim seeking such relief can only be categorized as being wholly insubstantial and frivolous. Where a claim attempting to assert a

federal right or federal cause of action is "wholly insubstantial and frivolous", then the defect is jurisdictional and not merely one involving the sufficiency of the pleading (Cf.: Bell v. Hood, 327 U.S. 678, 682–683, 66 S.Ct. 773, 90 L.Ed. 939, and Dinneen v. Williams, 9 Cir., 219 F.2d 428, 430).

The inquiry of this Court is, of necessity, concerned therefore with whether there are any federal rights in plaintiffs to be vindicated by judicial authority at this time.

It is fundamental, of course, that the Declaratory Judgment Act (Title 28 U.S.C.A. §§ 2201, 2202) does not by itself enlarge the jurisdiction of the federal courts, but merely provides an addition to the range of remedies available (Skelley Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194). Hence, the constitutional requirement that a "case or controversy" involving a substantive federal right must exist, before federal jurisdiction will attach, still obtains (Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 464, 81 L.Ed. 617, and cf.: Willing v. Chicago Auditorium Association, 277 U.S. 274, 48 S.Ct. 507, 72 L.Ed. 880). It is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant". Public Service Comm. v. Wycoff, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291.

The declaratory judgment procedure may not be utilized as a means of avoiding the necessity of exhausting administrative remedies (Order of Ry. Conductors v. Pennsylvania R. Co., 323 U.S. 166, 65 S.Ct. 222, 89 L.Ed. 154, and Macauley v. Waterman S.S. Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839.

Plaintiffs' reliance on United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754, as authority for their assertion that the Declaratory Judgment Act contains jurisdictional overtones is misplaced. That case involved claims that substantial rights under the First, Fifth, Ninth and Tenth Amendments to the Federal Constitution were being denied by the operation of the Hatch Act, 18 U.S.C.A. § 594 et seq. Plaintiffs herein have pointed to no such source of federal rights to be asserted against the operation of the reduction in force order applied by defendants.[1] The necessity of an assertion involving a basic right as a prerequisite to court litigation of the character that is here being considered is further pointed out by the case of Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L. Ed. 817, in which case, after considering the problem, it was there held that the existence of the fundamental right of a bona fide charitable organization to be free from unfounded defamatory statements by public officials was sufficient to satisfy the requirements that an

---

[1]. Plaintiffs' reliance on the cases of Wettre v. Hague, 1 Cir., 168 F.2d 825; Reeber v. Rossell, D.C., 91 F.Supp. 108; Farrell v. Moomau, D.C., 85 F.Supp. 125, and Fredericks v. Rossell, D.C., 95 F. Supp. 754, in this connection is likewise misplaced. In the Wettre, Reeber and Farrell cases, the plaintiffs there had clearly brought themselves within the provisions of the Veterans' Retention Preference Act (Title 5 U.S.C.A. § 861) which gave them certain fundamental rights, the violation of which was drawn into question. Jurisdiction in those cases turned on the existence of some federal right to be vindicated by the action, and not on the mere fact that a civil service employee was seeking declaratory relief in connection with a dispute with his employer. The Fredericks case, if anything, is authority for the defendants' position, not plaintiffs'. There the District Court declined to exercise jurisdiction over the claim of the plaintiff for declaratory relief where he had already been discharged from government service, holding that the Declaratory Judgment Act did not enlarge the Court's jurisdiction. The Court in that case makes passing reference to the Reeber and Farrell cases as authority for the proposition that the Federal Courts may be used to obtain a preliminary injunction restraining the agency from discharging an employee threatened with discharge. But, as has already been noted, the Courts in those cases acted only where a clear statutory grant of rights to the respective plaintiffs was threatened with infringement.

actual controversy existed and that the plaintiff had standing to litigate the claim.

What rights, then, are claimed by plaintiffs to have been violated by defendants so that an exercise of federal jurisdiction would be proper in the case now under consideration? Plaintiffs have steadfastly maintained that their proposed demotion is part of a reduction in force program, and at the same time, with equal vigor, have contended that they are not complaining that any retention preference rights (E.g.: Title 5 U.S.C.A. § 861, and Title 5 C.F.R. Part 20) have been violated by defendants. They cite § 863 and § 652 of Title 5 U.S.C.A. as the source of their rights to be protected from the demotions herein challenged.

■ Section 863, supra, has been repeatedly held to be inapplicable where the suspension, separation or reduction in rank or compensation takes place as the result of a reduction in force program instituted for reasons of efficiency or economy (Ashley v. Ross, 89 U.S.App. D.C. 339, 191 F.2d 655; Fass v. Gray, 91 U.S.App.D.C. 28, 197 F.2d 587; and Duncan v. Blattenberger, D.C., 141 F.Supp. 513). Any other interpretation would tend to elevate the employment rights of a federal worker above the needs of his government. The courts have not seen fit to attribute such an unsound policy to the lawmakers.

■ Section 652(a) sets forth the rule that no classified civil servant shall be removed or suspended without pay "except for such cause as will promote the efficiency" of the service and "for reasons given in writing". Where there has been substantial compliance with this section, and the regulations propounded thereunder (Title 5 C.F.R. Part 9) by the employing agency, the courts may not review the reasons, causes or propriety of the aggrieved employee's dismissal (Angilly v. United States, D.C., 105 F.Supp. 257, 259, affirmed, 2 Cir., 199 F.2d 642, and Williams v. Cravens, 93 U.S.App.D.C. 380, 210 F.2d 874, 876). Under the above regulations, and, in particular § 9.102(1) (i), the employee, in order to avail himself of the procedural devices set forth in the statute and the regulations, is required to file an answer in writing with the employing agency which has notified him of its proposed action regarding his employment status. No such compliance with the statute or regulations is either alleged, shown or even suggested by plaintiffs in this action. It is, of course, fundamental that judicial relief is not available to an aggrieved federal employee, where he has failed first to avail himself of his administrative remedies in vindication of his rights (Fitzpatrick v. Snyder, 5 Cir., 220 F.2d 522, and Hardy v. Rossell, D.C., 135 F.Supp. 260). Hence, it might easily be said that § 652 (supra) is not available for the plaintiffs' benefit in this action, for they, themselves, have failed to comply with the provisions of that section and the corresponding regulations. However, an even more fundamental reason exists why § 652, supra, is of no help to plaintiffs in the instant case. Under § 9.102(2) whenever an employee is separated, furloughed in excess of thirty days, or demoted by reason of a *reduction in force*, the "Retention Preference Regulations for Use in Reductions in Force" (Title 5 C.F.R. Part 20), in conjunction with § 12 of the Veterans' Preference Act of 1944, as amended (Title 5 U.S.C.A. § 861), are to be followed rather than the provisions of § 652 and corresponding regulations. Since plaintiffs have affirmatively asserted (1) that their demotion is the result of a reduction in force order and the implementation thereof, and (2) that *no retention preference rights* have been violated, their assertion that this section affords them any protection borders on the frivolous.

■ Even if the plaintiffs have erroneously characterized the nature of the adjustment in their employment status as a "reduction in force", this Court would be left with no choice but to decline jurisdiction for the reason that plaintiffs have wholly failed to exhaust their administrative remedies. Their only attempt to obtain redress prior to

converging on the Federal District Court was to write a letter to the Regional Director of the Twelfth Civil Service Region in San Francisco. The Regional Director determined that the Civil Service Commission had no jurisdiction of their complaint. His determination in this regard has never been tested by the appellate processes available within the Civil Service hierarchy (See: e.g., Title 5 C.F.R. § 9.106, referring to Part 22, and § 20.9). The Court does not have the benefit of the Civil Service Commission's views of the situation out of which this controversy emerges.

■ Furthermore, even assuming all Civil Service remedies had been exhausted by plaintiffs in this case, if this action is in fact based upon a complaint arising out of a cause other than a reduction in force, then the only basis for plaintiffs' grievances would be the placement of military personnel in the supervisory positions formerly occupied by them, which would unquestionably indicate dissatisfactions with "specific aspects of [their] employment, working conditions, or work relationships which are outside of [their] control" within the meaning of § 2, subd. 1(d) (2) of A.F.M. 40–1, AF E2.2 (The Air Force Manual governing the grievance procedure for Air Force civilian personnel). Thus, an available intradepartmental grievance procedure would exist to be exhausted by plaintiffs in vindication of whatever rights they might have, prior to seeking judicial relief.

■ The obvious rationale behind the exhaustion doctrine is that the particular agency involved should have the opportunity, out of deference to its presumed expertise, to place the factual situation involved against the background of its superstructure of policy, and evolve a rule or doctrine to meet the situation, before the Courts attempt to interfere in what is distinctly beyond their baili-

wick (See the excellent discussion of the doctrine in Hardy v. Rossell, 135 F.Supp. at pages 264–265). When the agency has been afforded its rightful authority, and not before, the Court is able to ultimately test the agency determination in the light of its statutory authority, and the relation of such authority to the individual rights of the aggrieved persons involved.

Such cases as Wettre v. Hague, 1 Cir., 168 F.2d 825, and those following the exhaustion principles therein expressed (For example, Reeber v. Rossell, D.C., 91 F.Supp. 108, and Farrell v. Moomau, D. C., 85 F.Supp. 125), have not been free from criticism (See: e.g. Hardy v. Rossell, D.C., 135 F.Supp. 260, 264, 265; May v. Glore, D.C., 132 F.Supp. 327, 329; and cf.: Fitzpatrick v. Snyder, supra, limiting Wettre v. Hague). This Court is of the view that the Hardy, May and Fitzpatrick cases represent the sounder approach. Furthermore, as noted in footnote 1, each of the cases, above noted, and relied upon by plaintiffs in this connection, can be distinguished from the instant case, since each of those cases involved a clearly applicable statutory grant of rights to the plaintiffs, the violation of which was properly drawn into issue.

■ There is no doubt that failure to exhaust administrative remedies goes to the very jurisdiction of this Court (Burns v. McCrary, 2 Cir., 229 F.2d 286).

For the foregoing reasons it is abundantly clear that plaintiffs have failed to bring themselves within the jurisdiction of this Court.

It Is, Therefore, Ordered that plaintiffs' complaint and the cause of action sought to be set forth therein be, and the same is, hereby dismissed. Defendants will prepare and lodge with the Clerk of this Court all papers and documents necessary for the final disposition of this case.