**FLIGHT ENGINEERS' INTERNATION-AL ASSOCIATION, EAL CHAPTER, AFL-CIO, an unincorporated labor organization, Plaintiff,**

v.

**EASTERN AIR LINES, INC., a corporation,**

and

**Air Line Pilots Association, an unincorporated labor organization, Defendants.**

United States District Court
S. D. New York.

July 14, 1965.

See also, D.C., 208 F.Supp. 182, affirmed 2 Cir., 307 F.2d 510.

Patt & Heimowitz, New York City, Zimring, Gromfine & Sternstein, Washington, D. C., of counsel, for plaintiff.

Proskauer, Rose, Goetz & Mendelsohn, New York City, Gambrell, Harlan, Russell & Moye, Atlanta, Ga., for defendant Eastern Air Lines, Inc.

Cohen & Weiss, New York City, for defendant Air Line Pilots Assn.

BONSAL, District Judge.

This action was commenced on August 21, 1962. The original complaint was the subject of the proceedings herein-after described. The amended or supplemental complaint here involved was filed on February 13, 1964. In this amended or supplemental complaint, plaintiff, Flight Engineers' International Association, EAL Chapter, AFL–CIO (FEIA), seeks permanent injunctive relief enjoining the defendants Eastern Air Lines, Inc. (Eastern) and Air Line Pilots Association (ALPA) from alleged violations of the Railway Labor Act, 44 Stat. 577, 45 U.S.C. § 151 et seq. (Act) and damages against Eastern and ALPA in the sum of $11,500,000, and for exemplary damages in an equal amount.

Defendant Eastern and ALPA have each moved for summary judgment dismissing the amended or supplemental complaint on the ground that this Court is without jurisdiction to grant the relief sought.

The dispute here involved is one of a series of similar disputes which have plagued the air transportation industry since the advent of jet aircraft. It revolves around the representation of cockpit personnel, and has been accentuated by rival claims of FEIA and ALPA for representation of the crews in the cockpits of Eastern's aircraft.

Since 1948 Federal regulations have required Eastern to man all of its 4-engine aircraft weighing in excess of 80,000 lbs. with a crew of three, consisting of a pilot, a co-pilot and a certified flight engineer. Eastern's pilots and co-pilots were at that time, and continue to be, represented by ALPA. Each of them is a commercially qualified pilot with a P & I license (pilot license and instrument rating). At least since 1957 the flight engineers on Eastern's aircraft were represented by FEIA, and each flight engineer held a flight engineer's certificate and an A & E license (airframe and engine license). In 1957 an industry-wide controversy arose on the "crew complement" issue, which continued for several years and, because of the threatened disruption of the nation's commercial aviation system, it became the subject of extensive proceedings involving the President of the United

States, the Secretary of Labor and a specially appointed presidential commission (Feinsinger Commission), and proceedings before various administrative agencies of the Federal Government and in the courts.

In 1958, Eastern was faced with conflicting demands with respect to the third man in the cockpit, ALPA insisting that he have a P & I license, and FEIA insisting that he have an A & E license.

Following a 38-day strike by FEIA at the end of 1958, FEIA and Eastern entered into an agreement on December 31, 1958. In this agreement, Eastern in effect agreed to a 4-man complement (even though the Federal regulations only called for three), which would include a flight engineer holding an A & E license and without pilot qualifications. At the same time, Eastern had an agreement with ALPA that at least three members of the crew complement would have a P & I license. The agreement between FEIA and Eastern was to continue in force until April 1, 1960, and to be renewed automatically thereafter on a yearly basis unless a thirty-day notice of desire to change the agreement was served by either party on the other prior to April 1 of any year as required by Section 6 of the Act (45 U.S.C. § 156).

In February 1960 FEIA and Eastern exchanged notices of proposed modifications in the December 31, 1958 agreement, and negotiations continued until June 1962. While the original notices did not involve the crew complement issue, this issue became crucial in February 1961 when the National Mediation Board (Mediation Board) ruled that pilots, copilots and flight engineers on United Air Lines jet aircraft constituted a single craft or class under the Act and were therefore to select a single bargaining representative. To protest the decision of the Mediation Board, FEIA struck Eastern and other carriers, and President Kennedy, to terminate the strike, established the Feinsinger Commission to recommend solutions for the controversy. The report of the Feinsinger Commission, issued on October 17, 1961, recommended that ALPA and FEIA merge into one union and that, pending the merger, the air lines should provide FEIA members with pilot training in order that they could maintain their jobs while enabling the air lines to switch from 4-man jet cockpit crews to three, having pilot qualifications.

On October 20, 1961 Eastern accepted the recommendations of the Feinsinger report, and during the next five months Eastern and ALPA negotiated on the implementation of the Feinsinger Commission's recommendations, with the assistance of the Secretary of Labor, the Mediation Board and members of the Feinsinger Commission. The negotiations broke down, and on February 21, 1962 FEIA sent Eastern a strike notice. The following day the President established Emergency Board No. 144 (the Kheel Board), which took evidence and made recommendations to the parties that they enter into an agreement implementing the Feinsinger Commission's recommendations.

Upon receiving the Kheel Board's recommendations, further negotiations were undertaken between the parties until June 9, when FEIA again served Eastern with a strike notice. On the same day, the President proposed that the parties submit their differences, including the crew complement issue, to arbitration, which proposal was accepted by Eastern and rejected by FEIA.

On June 21, 1962 another airline, TWA, reached a settlement with its flight engineers, under the auspices of the Secretary of Labor, by which the TWA flight engineers agreed to accept pilot training in exchange for guarantees that they would be given preference on all third seats in TWA's jet cockpits. Eastern sought to enter into a similar agreement with FEIA, but the effort was unsuccessful, and on June 23, 1962 FEIA struck Eastern. By reason of the strike, Eastern shut down all operations from June 23, 1962 until July 23, 1962, when it resumed operations on a limited basis. During this period efforts by the Federal Government to terminate the strike were

unsuccessful, as were efforts by Eastern to have FEIA accept a settlement modeled on the TWA settlement.

On July 17, 1962, Eastern notified FEIA that it was withdrawing all prior offers, including offers of retroactive wage increases, but would enter into an arrangement, effective immediately, under which its jet aircraft would be manned by a flight crew of three and would require flight engineers to have pilot training which Eastern would provide, to serve as a member of the cockpit crew. FEIA was given one day, to July 18, 1962, to accept Eastern's proposal, and was informed that if it failed to do so Eastern's offer would be made to the striking flight engineers individually. Those who accepted Eastern's offer and returned to work by July 24 would receive pilot training sufficient to make them eligible for flight engineers' duty on jet aircraft, while those who did not accept pilot training would, if re-employed, be restricted to service on propeller aircraft. Eastern also announced its intention of permanently replacing all flight engineers who did not return to work by July 24, 1962.

FEIA did not accept Eastern's offer, and on July 18 the offer was made to the striking flight engineers individually. On the same day, Eastern commenced negotiations with ALPA to replace the flight engineers who did not return to work by the July 24 deadline, and these negotiations resulted in three agreements under which Eastern would give ALPA pilots the training necessary to enable them to obtain a flight engineer's certificate. The agreements provided for a flight crew of three—pilot, co-pilot and pilot engineer. The pilot engineer would have a flight engineer's certificate and a P & I certificate. Any pilot accepting flight engineering training would suffer no loss in pilot seniority or pay, and pilots would have their choice in bidding on the three positions on the basis of seniority.

On July 23, 1962 the Secretary of Labor again called upon Eastern and FEIA to terminate the strike within the framework of the TWA settlement, subject to concurrence by ALPA. Eastern declined because there was no assurance that ALPA would accept the proposal, and on August 6 the Secretary of Labor withdrew from the dispute.

On August 7–8 Eastern and FEIA made a final unsuccessful effort to negotiate a settlement of the strike, and on August 10, 1962 Eastern made a final proposal to the striking flight engineers who had not previously returned to work, promising them prior job rights on propeller aircraft, but not on jets and stating that those who did not accept the offer by August 16 would lose all prior job rights on any of Eastern's aircraft.

On August 10, Eastern began to replace the striking flight engineers with pilots obtained from ALPA, and on August 23 Eastern began to resume full operations, and reached full operations sometime after August 25, 1962.

On August 25 all striking flight engineers who had not returned to work were notified that they had been permanently replaced, although it appears Eastern did not have fully trained replacements on that date.

On August 27 FEIA and some of the striking flight engineers wrote Eastern protesting their discharge and demanding that the discharges be processed as a grievance under the collective bargaining agreement of December 31, 1958. Eastern rejected these demands, taking the position that the agreement had been terminated, so that the flight engineers had not been "discharged, disciplined or dismissed" under the agreement.

On September 28, 1962 FEIA notified Eastern that it would raise the issue of the replacement of the striking flight engineers as a formal grievance before the System Board of Adjustment established by the parties under the Act. Eastern refused to participate, and declined to request the Mediation Board to appoint a neutral member to the System Board of Adjustment, with the result that the Mediation Board did not appoint a neutral member.

On September 27, 1962 FEIA offered to terminate the strike and to sign an agreement incorporating Eastern's July 17, 1962 proposal if all striking flight engineers could return to work in order of seniority. Eastern declined, on the ground that the changes proposed on July 17 had already been made, the strikers had been permanently replaced, and that therefore there was no basis for further negotiation.

Since October 19, 1962 the controversy has been subject to extensive proceedings before the courts and before various administrative agencies charged with the enforcement of the Act.

On June 4, 1964, following a representational election held under its auspices, the Mediation Board certified ALPA as the bargaining agent for Eastern's flight engineers, and thereafter, on September 11, 1964, Eastern entered into a collective bargaining agreement with ALPA covering these employees, which agreement is still in force. FEIA contested the holding of the representational election and sought a preliminary injunction in the District of Columbia enjoining the Mediation Board from holding the election, which was denied. Flight Engineers' Int'l Ass'n, EAL Chapter v. National Mediation Board, 230 F.Supp. 611 (D.D.C.1964), aff'd, 338 F.2d 280 (D.C. Cir. 1964).

FEIA also charged Eastern with unfair labor practices before the Mediation Board, and requested an adjudication of the alleged unfair labor practices before a representational election was held. The Mediation Board, without a hearing, denied the request and proceeded with the holding of the election. Proceedings are still pending in the District Court of the District of Columbia arising out of the actions taken by the Mediation Board.

FEIA has instituted two actions in this Court. The first (Civ. 62–2586), was brought against Eastern alone, and the second, which is the present action, was brought against Eastern and ALPA. In the first action, FEIA's motion for a preliminary injunction was denied by Judge Feinberg by decision dated August 10, 1962 (Flight Engineers Int'l Ass'n, EAL Chapter v. Eastern Air Lines, Inc., 208 F.Supp. 182, aff'd 307 F.2d 510 (2d Cir. 1962), cert. denied, 372 U.S. 945, 83 S.Ct. 934, 9 L.Ed.2d 970 (1963)), and the first action was thereafter discontinued by stipulation approved by the Court on February 4, 1964, with leave to FEIA to file its amended or supplemental complaint in this action, which it filed on February 13, 1964.

In the present action, FEIA sought a preliminary injunction based on its original complaint, which was denied by Judge Levet by decision dated September 4, 1962 (51 L.R.R.M. 2105), and Judge Levet's decision was affirmed by the Court of Appeals on January 4, 1963, 2 Cir., 311 F.2d 745, cert. denied, 373 U.S. 924, 83 S.Ct. 1523, 10 L.Ed.2d 423 (1963).

Both Judge Feinberg and Judge Levet, in their decisions above cited, went into considerable detail as to the facts involved in the controversy. They found no evidence of conspiracy between Eastern and ALPA and no evidence of bad faith on the part of Eastern in its efforts to resolve the jurisdictional controversy between FEIA and ALPA. Based on FEIA's prior action and its original complaint herein, Judges Feinberg and Levet concluded that FEIA had failed to show that Eastern had violated its legal rights or that it had a reasonable probability of success on a final hearing.

In affirming Judge Levet's denial of a preliminary injunction, the Court of Appeals, speaking through Judge Hays, found that the subject matter of the controversy was a dispute as to representation of employees and rival claims of jurisdiction, and that such claims "are to be vindicated or rejected not by the courts but by the administrative and other processes provided by the Act. General Committee, etc. v. Missouri-Kansas-Texas R. R. [Co.], 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943); General Committee, etc. v. Southern Pacific Co., 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85 (1943); Division No. 14, Order of R. R. Telegraphers v. Leighty, 298 F.2d 17 (4th

Cir. 1962); Flight Engineers Int'l Ass'n, etc. v. Trans World Airlines, Inc., 205 F.Supp. 137 (S.D.N.Y.1962)." 311 F.2d 745, at 747. After reviewing these cases in some detail, Judge Hays concluded, 311 F.2d at 748:

"On the authority of these cases it is clear that the district court was without jurisdiction to grant the relief which the plaintiff sought. The doubtful claims of representation and the jurisdictional controversy are subjects upon which the Act provides for non-curial treatment. The courts must refrain from interfering in a field from which Congress has excluded them."

The observation of the Court of Appeals in Ruby v. American Airlines, Inc., 323 F.2d 248 (2d Cir. 1963) at 254, that it was "obvious almost from the beginning of this action that it concerned the proper representation of American's pilots, a subject which Congress has given the Mediation Board the duty to determine", applies with equal force to the controversy here involved, viz., the proper representation of Eastern's flight engineers.

■ Having reviewed the amended or supplemental complaint and the documents filed by the parties on these motions for summary judgment, this Court concludes, as did Judge Feinberg and Judge Levet, that there is no evidence of a conspiracy between Eastern and ALPA, and no evidence of bad faith on the part of Eastern in seeking to resolve the jurisdictional dispute between FEIA and ALPA.

■■ The Court finds nothing in the amended or supplemental complaint to change the nature of this controversy from that found by the Court of Appeals. It is bound by the determination of the Court of Appeals that this Court refrain from interfering in a field from which Congress had excluded it. There only remains, therefore, FEIA's contention that the amended or supplemental complaint includes three basic claims which were not in its original complaint, and,

hence, not before the District Court or the Court of Appeals in the prior proceedings above described. According to FEIA's brief, these three basic claims are:

(1) The claim that Eastern violated the Act by discharging and refusing to reinstate the strikers after they had made unconditional offers to return to work and/or before they had been permanently replaced;

(2) The claim that Eastern violated the Act by discriminatorily conditioning the return to work of the strikers upon relinquishment by them of their seniority rights, and by according super-seniority to their replacements; and

(3) The claim that Eastern violated the Act by refusing to process or submit to a System Board certain grievances filed by the strikers and by EAL Chapter.

[4] While these three claims appear to be part and parcel of the same controversy, FEIA contends that they arose subsequent to the filing of the original complaint on August 21, 1962, in that FEIA did not know at that time that the striking engineers had not been permanently replaced by Eastern and that the refusal of Eastern to re-employ the strikers came after the filing of the original complaint. However, in the Court's view, this makes no difference since they involve the same controversy as to which the administrative agencies under the Act have jurisdiction to the exclusion of the court.

Mr. Justice Douglas, speaking for the Supreme Court in General Committee, etc. v. Missouri-Kansas-Texas R. R. Co., 320 U.S. 323, at 336, 64 S.Ct. 146, at 152, 88 L.Ed. 76, said:

"However wide may be the range of jurisdictional disputes embraced within § 2, Ninth, Congress did not select the courts to resolve them. To the contrary, it fashioned an administrative remedy and left that group of disputes to the National Media-

tion Board. If the present dispute falls within § 2, Ninth, the administrative remedy is exclusive. If a narrower view of § 2, Ninth, is taken, it is difficult to believe that Congress saved some jurisdictional disputes for the Mediation Board and sent the parties into the federal courts to resolve the others." (Footnotes omitted.)

■■ It is possible to construe the first claim as one for wrongful discharge, and, indeed, individual employees discharged in violation of the Act are entitled to a remedy in the courts. Moore v. Illinois Central R. R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941). Cf. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). However, this remedy is available only to the individual employees and not to FEIA. Cf. Air Line Dispatchers Ass'n v. California Eastern Airways, Inc., 127 F.Supp. 521 (N.D.Cal.1954).

■ It is clear from the amended or supplemental complaint that FEIA is seeking global damages for alleged wrong to it and not individual damages for such of its members who may have been wrongfully discharged. Moreover, any action for wrongful discharge must be founded on a violation of the Act or of an agreement entered into under the Act in force at the time the discharge occurred. There was of course the agreement between Eastern and FEIA, dated December 31, 1958, as to which both sides served notices of modification in 1960. The events from that time until the strike on June 23, 1962 have already been recited. For the reasons cogently stated by Judge Feinberg and Judge Levet, once the strike had been called and paralyzed the operations of Eastern, the agreement was no longer in force and Eastern was entitled to take unilateral action or self-help in order to restore the vital public service of its air line. As stated by Judge Levet:

"Based on the record before me, I find, for the same reasons as did Judge Feinberg, that as between the

plaintiff [FEIA] and Eastern the procedures of the Act for the settlement of this dispute have been exhausted and that the parties were free to resort to self-help."

Judge Feinberg stated that under the circumstances Eastern could hire and train co-pilots to replace the strikers and, in so doing, it did not exceed the boundaries of lawful "self-help." Flight Engineers Int'l Ass'n, EAL Chapter v. Eastern Air Lines, Inc., 208 F.Supp. at 194. Moreover, the Mediation Board in its brief to the Court of Appeals for the District of Columbia, in Flight Engineers' Int'l Ass'n, EAL Chapter v. National Mediation Board, D.C.Cir., 338 F.2d 280, stated, at p. 32,

"The Board determined that FEIA's strike against Eastern was an economic strike and that Eastern therefore had a right to permanently replace these strikers * * * Cf. NLRB v. McKay Radio & Tel. Co., 304 U.S. 333 [58 S.Ct. 904, 82 L.Ed. 1381]."

■ In exercising this "self-help", the Court finds that Eastern made reasonable efforts to give the striking employees an opportunity for reinstatement without loss of job security. It does not appear that Eastern either violated the Act or any agreement between the parties by discharging and refusing to reinstate the strikers. Moreover, to entertain FEIA's claims for the reinstatement of its members would be to bring into issue the certification of the Mediation Board of ALPA as the bargaining agent for Eastern's flight engineers. This Court would be without power to review the Mediation Board's action in this regard, even if the Mediation Board were a party to this action. Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943); General Committee, etc. v. Missouri-Kansas-Texas R. R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943); General Committee, etc. v. Southern Pacific Co., 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85 (1943). Nor may

the Court grant relief which would amount to a collateral attack on the Mediation Board's certification. Order of Railway Conductors of America v. Pennsylvania R. R. Co., 323 U.S. 166, 65 S.Ct. 222, 89 L.Ed. 154 (1944).

In Ruby v. American Airlines, Inc., supra, the Court of Appeals stated, 323 F.2d at 256:

"But it had become apparent, long before Allied's application to the Mediation Board, that this action was subject to the vice that it sought orders from a federal court that might frustrate ultimate determination by the agency to which Congress gave exclusive responsibility; the action should have been dismissed as soon as this appeared. See Division No. 14, Order of Railroad Telegraphers v. Leighty, 298 F.2d 17 (4 Cir.), cert. denied, 369 U.S. 885, 82 S.Ct. 1160, 8 L.Ed.2d 287 (1962)."

This applies with even greater force here, since the Mediation Board has already made an "ultimate determination" by certifying ALPA as the bargaining agent for Eastern's flight engineers.

As previously stated, the Court finds no evidence of bad faith on the part of Eastern, nor of a conspiracy between Eastern and ALPA. Since the agreement between Eastern and FEIA was no longer in force, Eastern was under no obligation to reemploy all the strikers. The seniority rights to be accorded replacements for those strikers who did not return was a proper subject of negotiation between Eastern and ALPA, and nothing that was done converted an economic strike into an unfair labor practice strike, as FEIA contends.

The foregoing disposes of the first and second alleged basic claims.

The third claim, that Eastern violated the Act by refusing to process or submit to a System Board the grievances filed by the strikers and by FEIA, poses a claim which involves the jurisdiction of the Mediation Board and as to which proceedings have been taken and are being taken before the Media-tion Board and the courts of the District of Columbia. Since the contract between the parties of December 31, 1958 was no longer in force, it follows that these claimed grievances were not subject to the processes of the System Board of Adjustment at the time Eastern was requested to participate in the appointment of a fifth arbitrator. Elgin, Joliet & Eastern Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945); Manning v. American Airlines, Inc., 221 F.Supp. 301 (S.D.N.Y.1963), aff'd 329 F.2d 32 (2d Cir. 1964).

The Court concludes that the three additional claims advanced by FEIA do not change the nature of the controversy as found by the Court of Appeals. Since the Court is without jurisdiction of the subject matter, it is equally without jurisdiction to direct the reinstatement of the strikers or to award damages. As stated by Judge Friendly in Ruby v. American Airlines, Inc., supra, 323 F.2d at 256, 257:

"The obstacle in a case like this is not truly lack of 'jurisdiction' in the basic sense of a lack of power in the court 'to determine whether it [the claim] was or was not well founded in law and in fact,' Lauritzen v. Larsen, 345 U.S. 571, 575, 73 S.Ct. 921, 924, 97 L.Ed. 1254 (1953); rather, as Mr. Justice Jackson there went on to explain, 'As frequently happens, a contention that there is some barrier to granting plaintiff's claim is cast in terms of an exception to jurisdiction of subject matter.' Compare Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Whether such a 'barrier' is apparent the very instant that suit is brought or becomes so later, the court is bound to dismiss."

Accordingly, summary judgment in favor of the defendants and against the plaintiff is granted, and the Clerk is directed to enter judgment dismissing the plaintiff's amended or supplemental complaint for lack of jurisdiction over the subject matter.

It is so ordered.