FLIGHT ENGINEERS INTERNATIONAL ASSOCIATION, EAL CHAPTER, AFL-CIO, Appellant,

v.

EASTERN AIR LINES, INC. and Air Line Pilots Association, Appellees.

No. 173, Docket 29997.

United States Court of Appeals Second Circuit.

Argued Jan. 4, 1966.

Decided April 12, 1966.

304

I. J. Gromfine, Washington, D. C. (Herman Sternstein, William B. Peer, and Zimring, Gromfine & Sternstein, Washington, D. C., and Patt & Heimowitz, New York City, with him on the brief), for appellant.

George G. Gallantz, New York City (Larry M. Lavinsky, Saul G. Kramer, and Proskauer, Rose, Goetz & Mendelsohn, New York City; W. Glen Harlan and Gambrell, Harlan, Russell & Moye, Atlanta, Ga., with him on the brief), for appellee Eastern Air Lines.

Herbert A. Levy, New York City (Henry Weiss and Cohen & Weiss, New York City, with him on the brief), for appellee Air Line Pilots Association.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

MOORE, Circuit Judge:

This appeal presents another facet of the drawn-out controversy between the defendant Eastern Air Lines, Inc. (Eastern), the plaintiff Flight Engineers International Association, EAL Chapter, AFL-CIO (FEIA), and the defendant Air Line Pilots Association (ALPA). Portions of the controversy have previously come before the Civil Aeronautics Board, the National Mediation Board, and a variety of courts.

The opinion of the District Court ably sets forth the background of the dispute. 243 F.Supp. 701 (S.D.N.Y.1965). Only the barest summary is necessary here.

Federal regulations require a crew of three—a pilot, a copilot, and a certified flight engineer—in certain of the larger commercial aircraft. ALPA, which represented Eastern's pilots and copilots, and FEIA, which represented Eastern's flight engineers, clashed in 1958 over the license requirements of the flight engineer, the "third man in the cockpit." FEIA maintained that he should hold a mechanic's license (A & E license), held by FEIA members but not generally held by ALPA members. ALPA maintained that he should hold a pilot's license (P & I license), held by ALPA members but not generally held by FEIA members. After a strike by FEIA, Eastern agreed to a four-man crew, one member of which had to have a mechanic's license but did not have to have a pilot's license. This arrangement continued until 1962, with occasional strikes by FEIA and repeated attempts by presidential commissions and boards to solve the underlying problem of who should fill the third seat in the cockpit.

On June 23, 1962, FEIA again went out on strike, causing Eastern to shut down operations. In mid-July Eastern offered to give pilot's training to FEIA flight engineers so that they would be eligible for occupancy of the third seat. FEIA did not accept the offer within the time set. Eastern then made the same offer individually to each of the striking engineers, informing them that if they did not report to work by July 24th, they might be replaced. On August 10, 1962, Eastern made a final proposal to the striking flight engineers, promising them prior job rights on propeller equipment but not on jets, and stating that those who did not accept the offer by August 16th would lose all prior job rights. Under the terms of agreements which Eastern reached with ALPA during this period, pilots who applied for the position of "pilot engineer"—the new title given to occupants of the third seat in the cockpit —would suffer no loss of their pilot seniority.

On August 10th, Eastern began to replace the striking flight engineers with ALPA pilots and on August 25th Eastern notified all flight engineers still out on strike that they had been permanently replaced. FEIA and some of the striking flight engineers wrote Eastern on August 27, 1962, demanding that their discharge be processed as a grievance under the FEIA-Eastern collective bargaining agreement. Eastern rejected these demands on the grounds that the bargaining agreement had been terminated.

On September 27, 1962, FEIA offered to end the strike along the lines of settlement proposed by Eastern in July, provided that striking flight engineers could return to work in order of seniority. Eastern declined on the grounds that the strikers had been permanently replaced, so that there was no basis for further negotiation.

On September 28, 1962, FEIA informed Eastern that it would raise the replacement of the flight engineers as a formal grievance before the System Board of Adjustment established by the parties under the Railway Labor Act. Eastern refused to participate. As a result, the Mediation Board did not appoint a neutral

member to the System Board of Adjustment.

*Previous Litigation*

FEIA has been seeking redress from Eastern and ALPA, together or separately, before a range of administrative and judicial bodies since the summer of 1962, for wrongs alleged to have been committed during the summer of 1962. The history of these efforts is necessary to the resolution of the problem before us.

In the union's first attempt at administrative review, FEIA filed a complaint with the CAB alleging that Eastern had violated Section 401(k)(4) of the Federal Aviation Act, 49 U.S.C. § 1371(k)(4), which makes compliance with the Railway Labor Act a condition for the holding of a certificate by an air carrier. The complaint alleged a number of violations of the Railway Labor Act by Eastern. The CAB dismissed the complaint, partly on the grounds that similar grievances were the basis of pending actions in the courts, and partly because the uncertain nature of the FEIA representation of the flight engineers was a question for the National Mediation Board to decide. The Court of Appeals for the District of Columbia Circuit held that this dismissal was not an abuse of discretion by the CAB, although the Court indicated that it believed the CAB had some independent jurisdiction to decide whether the Railway Labor Act had been violated. Flight Engineers' International Ass'n, etc., v. Civil Aeronautics Board, 332 F.2d 312, 317 (D.C.Cir.1964).

In 1964 FEIA sought a preliminary injunction to enjoin the National Mediation Board from holding an election to determine the bargaining representative of the flight engineers then working for Eastern, on the grounds that in determining who was qualified to vote in the representation election, the National Mediation Board had refused to investigate FEIA's charges of unfair labor practices. The district court held that the Mediation Board was under no duty to hold hearings on such charges. Flight Engineers' Int'l Ass'n, etc. v. Nat'l Mediation Board, 230 F.Supp. 611 (D.D.C. 1964). The Court of Appeals affirmed, indicating that the Mediation Board had made some investigation as to the voting rights of the ALPA pilots who had replaced FEIA engineers. Flight Engineers' Int'l Ass'n, etc. v. Nat'l Mediation Board, 338 F.2d 280 (D.C.Cir. 1964).

In the summer of 1962 FEIA brought suit in the Southern District of New York, seeking a preliminary injunction against Eastern on the grounds that Eastern had failed to bargain as required by the Railway Labor Act, and had bargained improperly by withdrawing earlier offers to the union and by writing to the individual employees. The district court denied the relief requested on the grounds that FEIA had shown no clear and convincing evidence of unfair labor practices and had not demonstrated a reasonable probability of success after trial. This court affirmed on the opinion below. 208 F.Supp. 182 (S.D.N.Y.), aff'd per curiam, 307 F.2d 510 (2d Cir. 1962), cert. denied, 372 U.S. 945, 83 S.Ct. 934, 9 L.Ed.2d 970 (1963).

FEIA started the present suit against Eastern and ALPA in the Southern District of New York on August 21, 1962, requesting that the defendants be preliminarily enjoined from alleged violations of the Railway Labor Act. The district court found on the merits that the procedures for bargaining under the Act had been exhausted so that the parties were free to resort to economic self-help; that Eastern had bargained in good faith with FEIA; and that Eastern had not conspired with ALPA against FEIA. The court denied the request for a preliminary injunction on the grounds that FEIA had not shown a reasonable chance of success at a full trial. 45 CCH Lab. Cas. ¶ 17,814 (1962). This court affirmed on the ground that since the case involved problems of representation and problems of jurisdiction between labor unions, the district court was without jurisdiction to grant the relief which the plaintiff sought. 311 F.2d 745 (2d Cir.), cert. denied, 373 U.S. 924, 83 S.Ct. 1523,

10 L.Ed.2d 423 (1963). In February 1964 FEIA filed an amended or supplemental complaint against Eastern and ALPA, requesting not only an injunction against Eastern ordering it to recognize FEIA as the exclusive bargaining representative of the flight engineers, but also a declaratory judgment declaring that the many agreements between Eastern and ALPA (November 12, 1958, January 1, 1959, July 20, 1962, August 3, 1962, and August 6, 1962) were void and unenforceable; a mandatory injunction directing that Eastern reinstate the striking FEIA flight engineers without prejudice, "ordering and directing Eastern to dismiss, if necessary, any employees hired to replace the striking Flight Engineers"; and a judgment for damages of $11,500,000, together with a similar sum "as exemplary damages."

Both defendants moved for summary judgment dismissing the amended complaint on the ground that the court was without jurisdiction to grant the relief requested. The district court granted the defendants' motions, partly on the ground that there was no evidence of violations of the act and partly on the ground that the district court lacked jurisdiction of the subject matter. 243 F.Supp. 701 (S. D.N.Y.1965).

Much of the original complaint survives unaltered in its amended successor; and the passage of time has made these portions of the complaint no more a subject for judicial relief than they were at the time of the previous appeal. They still involve jurisdictional and representational disputes between the two unions—disputes which, under the Railway Labor Act, are "for non-curial treatment." FEIA v. Eastern Air Lines, 311 F.2d 745 at 748 (2d Cir.), cert. denied, 373 U.S. 924, 83 S.Ct. 1523, 10 L.Ed. 2d 423 (1963).

The amended complaint contains several new allegations: that the striking FEIA members were wrongfully discharged; that Eastern unlawfully conditioned the strikers' return to work on their relinquishment of seniority rights, and unlawfully gave superseniority to the ALPA replacements; and that Eastern unlawfully refused to process the grievances of the discharged employees and prevented the effective review of those grievances by the System Board of Adjustment.

These so-called new allegations (the replacement of the strikers, the demand for reinstatement of the discharged engineers and money damages) must be examined in the light of the many previous proceedings and decisions involving the controversies between Eastern, FEIA and ALPA as to the pilot-engineer status in the cockpit.

FEIA concedes that the determination of which union is to represent the occupants of the third seat in the cockpit is left to the National Mediation Board by Section 2, Ninth, of the Railway Labor Act. The National Mediation Board has made this determination. After deciding that both the strikers and their replacements could vote to choose a bargaining representative, it conducted a representation election, as a result of which it certified ALPA as the bargaining representative of the occupants of the third seat.

The allegations in the amended complaint which relate to the replacement of the strikers do not directly challenge the representational decision of the Mediation Board; but the judicial relief requested by FEIA flies "in the teeth of the board's certification" of ALPA, almost as much as a court order directing an employer not to bargain with a union flies in the teeth of the board's certification of that union. Order of Railway Conductors of America v. Pennsylvania R. R., 323 U.S. 166, 172, 65 S.Ct. 222, 89 L.Ed. 154 (1944). As the complaint itself recognizes, Eastern could afford to reinstate five hundred striking FEIA members only if it dismissed a comparable number of their replacements, most of whom voted for ALPA. The result would be a radical shift in the composition of the work force which might well make possible the ouster of ALPA by FEIA as the bargaining representative of the third-seat occupants.

The claim for money damages would have a similar effect. If granted in anything like the amounts requested, employers in similar situations in the future would never dare to deal with unions newly certified by the National Mediation Board, until they could obtain declaratory judgments from the courts as to the validity of the ousted union's claims that the Railway Labor Act had been violated —a result which would clash with the evident congressional intent to have disputed questions of representation in an industry so charged with the public interest disposed of rapidly. See Ruby v. American Airlines, Inc., 323 F.2d 248, 256 (2d Cir. 1963), cert. denied, 376 U.S. 913, 84 S.Ct. 658, 11 L.Ed.2d 611 (1964).

■ We do not mean to say that courts may never consider claims that the Railway Labor Act has been violated, if two unions are present. The second *Ruby* case makes clear that even if two unions are on the scene, such claims may be heard by the courts in certain circumstances. Ruby v. American Airlines, 329 F.2d 11 (2d Cir. 1964), vacated as moot sub nom. O'Connell v. Manning, 381 U.S. 277, 85 S.Ct. 1456, 14 L.Ed.2d 430 (1965). But in that case, the issue was whether a court could order an employer to bargain with a union (the one most recently certified by the National Mediation Board); and that issue had been heard by no other court or administrative body. The allegations here more directly affect questions of representation; the relief requested, if granted, would to a large extent conflict with the certification of ALPA by the board; and many of the questions presented have previously been considered on the merits by the courts.

FEIA maintains broadly that Congress did not intend in the Railway Labor Act to create rights without remedies, and that as a result courts should step in to hear Railway Labor Act complaints where administrative agencies have declined to do so. The law is not that simple; nor is its application to the facts of this case. The Mediation Board considered the legality of the replacement of the strikers,

at least to the extent of holding that the replacements were entitled to vote in the representational election. See FEIA v. National Mediation Board, 338 F.2d 280, 282 (D.C.Cir.1964).

Judge Levet found that the third seat positions on Eastern's jets were filled by replacements before Eastern's letter of August 8, 1962. This finding cuts the heart out of FEIA's argument that Eastern unfairly discriminated against the strikers by denying them access to work on jets. Judge Levet also found Eastern's temporary contracts with ALPA were fair, and that Eastern had completely and permanently replaced all the strikers by August 25, 1962—a finding inconsistent with FEIA's present claim that its members were discharged before they had been replaced. 45 CCH Lab. Cas. ¶ 17,814 (1962).

■■ Moreover, it seems clear that Congress did not intend courts to hear claims under the Act whenever no administrative body would hear them. In certain narrow areas, where the command of the statute is clear and the issue does not impinge on one committed for resolution to other bodies, judicial enforcement of the Railway Labor Act has been held proper. *E. g.*, Virginian R'y v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937). Courts may also require the Mediation Board to carry on its statutory duties to investigate and to certify. Air Line Dispatchers Association v. National Mediation Board, 89 U.S.App.D.C. 24, 189 F.2d 685, cert. denied, 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641 (1951). But the history of the Railway Labor Act, as interpreted by the Supreme Court, makes clear that in all other areas,

> "the command of the Act should be explicit and the purpose to afford a judicial remedy plain before an obligation enforcible in the courts should be implied. Unless that test is met the assumption must be that Congress fashioned a remedy available only in other tribunals. There may be as a result many areas in this field where

neither the administrative nor the judicial function can be utilized. But that is only to be expected where Congress still places such great reliance on the voluntary process of conciliation, mediation and arbitration * * * Courts should not rush in where Congress has not chosen to tread." General Committee of Adjustment, etc. v. Missouri-Kansas-Texas R. R., 320 U.S. 323, 337, 64 S.Ct. 146, 152, 88 L.Ed. 76 (1943).

■ To grant the judicial relief requested in FEIA's wholesale attack on the replacement of the strikers would directly affect the previous determination of the representational dispute by the National Mediation Board;[1] would reopen a controversy which has plagued the airlines for years and which has been fought to a rough conclusion by resort to the self-help envisaged by the act; and would lay down a precedent that would mean the inordinate protraction of comparable struggles in years to come. For these reasons, we do not feel that courts should consider the claims for judicial relief in FEIA's amended complaint which are directly connected with the replacement of the strikers.

The last of the new allegations in the amended complaint, concerning Eastern's refusal to process grievances and its paralyzing of the System Board of Adjustment, raises somewhat different problems.

The facts underlying FEIA's allegation are as follows. After Eastern told the striking engineers that they had been permanently replaced, FEIA and some of the strikers requested that the discharge of the engineers be processed as a grievance under the FEIA-Eastern collective bargaining agreement. Eastern refused to do so on the theory that the agreement had been terminated. The union attempted to bring the matter before the System Board of Adjustment, but the System Board split 2–2 on the problem. The collective bargaining agreement provided that if the System Board could not agree within a certain time, "it shall request the National Mediation Board to name a referee." Only the employee members of the System Board requested the naming of a referee, and the Mediation Board held that it had no power to name a referee under the circumstances. The District Court for the District of Columbia upheld the position of the Mediation Board. FEIA v. National Mediation Board, 230 F.Supp. 611 (D.D.C.), aff'd on other grounds, 338 F.2d 280 (D.C. Cir. 1964). FEIA maintains that Eastern's refusal to join in the request for the appointment of a neutral referee was in violation of Eastern's duty under Section 204 of the Railway Labor Act "to establish a board of adjustment."

■■ This issue is properly one for judicial consideration, since the relief requested is not the circumvention of the act's provisions for adjustment and mediation, but rather the enforcement of those provisions. International Ass'n of Machinists, etc. v. Central Airlines, Inc., 372 U.S. 682, 690, 83 S.Ct. 956, 10 L.Ed. 2d 67 (1963); Aaxico Airlines, Inc. v. Air Line Pilots Association, 331 F.2d 433, 437 (5th Cir.), cert. denied, 379 U.S. 933, 85 S.Ct. 333, 13 L.Ed.2d 344 (1964); cf. Virginian R'y v. System Federation No. 40, 300 U.S. 515, 57 S. Ct. 592, 81 L.Ed. 789 (1937). However, we agree with the trial court that since the collective bargaining agreement between the parties had terminated, Eastern was no longer under any obligation to process as grievances the allegations of the union, or to maintain the System Board of Adjustment for the resolution of the claims here asserted by the Union.

■ As the Supreme Court made clear in International Ass'n of Machinists, etc. v. Central Airlines, Inc., 372 U.S. 682, 690, 83 S.Ct. 956, 961, 10 L.Ed.2d 67

---

1. As the trial court stated in its opinion, "Moreover, to entertain FEIA's claims for reinstatement of its members would be to bring into issue the certification of the Mediation Board of ALPA as the bargaining agent for Eastern's flight engineers." (243 F.Supp. at 707.)

(1963), "the extent and nature of the legal consequences" (Deitrick v. Greaney, 309 U.S. 190, 200–201, 60 S.Ct. 480, 84 L.Ed. 694) of the duty to establish a board of adjustment under Section 204 are to be determined by the courts. In making this determination, we must bear in mind the intended function of the System Boards of Adjustment: to resolve minor disputes, i. e., disputes as to the interpretation and application of existing contracts, as opposed to "major disputes connected with a negotiation of contracts or alterations in them" (372 U.S. 687, 83 S.Ct. 959), which the Act leaves for resolution to the processes of mediation. See Elgin, J. & E. R'y v. Burley, 325 U.S. 711, 722–724, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). The Act's provisions for boards of adjustment serve the same function as provisions for arbitration under the typical collective bargaining agreement—a means for deciding "the smaller differences which inevitably appear in the carrying out of major agreements * * *" 325 U.S. at 724, 65 S.Ct. at 1290.

As long as it appears that the underlying collective bargaining agreement is still in effect, all disputes as to grievances and their processing should be solved by resort to the System Board of Adjustment, and courts will not permit this machinery to be paralyzed by unilateral action on the part of either the carrier or the representatives of the employees. See International Ass'n of Machinists, etc. v. Central Airlines, Inc., supra; Aaxico Airlines, Inc. v. Air Line Pilots Association, supra.

The collective bargaining agreement between Eastern and FEIA was signed on December 31, 1958. By its terms, it was to continue in force until April 1, 1960, renewable thereafter on a yearly basis until notice of a desire to change the agreement was served by either party on the other prior to April 1st of any year. Such a notice was sent by FEIA on February 8, 1960. Negotiations between the parties continued intermittently until February 1962, and were followed by the appointment of a presidential emergency board under Section 10 of the Act. The Board filed its report to the President on May 1, 1962, and the freezing of the situation which had been caused by the appointment of the emergency board ended thirty days later. After June 1, 1962 the contract was no longer in effect and the union was free to strike. FEIA v. Eastern Air Lines, 208 F.Supp. 182 (S.D. N.Y.), aff'd per curiam, 307 F.2d 510 (2d Cir. 1962), cert. denied, 372 U.S. 945, 83 S.Ct. 934, 9 L.Ed.2d 970 (1963). Unlike the collective bargaining agreement considered in Manning v. American Airlines, Inc., 329 F.2d 32 (2d Cir.), cert. denied, 379 U.S. 817, 85 S.Ct. 33, 13 L.Ed.2d 29 (1964), the status quo provisions of the Railway Labor Act had ceased to operate. Nor does FEIA suggest the existence of any conduct on the part of both parties which could serve as the basis for an argument that the parties had agreed to keep the former contract in effect although it was extinct by its own terms. The time for economic warfare had arrived, and the battle was not slow in coming.

Under such circumstances, what purpose could be served by maintaining the System Board of Adjustment? Presumably, it was still the appropriate forum for the assertion of rights which had arisen while the collective bargaining agreement was still in effect, see Elgin, J. & E. R'y v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). Conceivably it was the appropriate forum to consider the fairness of disciplinary action against the strikers, if a new agreement eventually was reached between Eastern and FEIA. International Air Line Pilots Ass'n v. Southern Airways, Inc., 44 CCHLab.Cas. ¶ 17,460 (M.D.Tenn.1962). But no such rights are asserted here. The only "grievances" are those arising from the replacement en masse of the strikers, which began after the agreement had ceased to be effective. Even if we assume that this issue, despite its large scale, would have been a "minor" dispute to be resolved by the System Board had the agreement remained in effect, the agreement was no longer

in effect. All-out economic war had begun, and the replacements were Eastern's answer to FEIA's strike. Under such circumstances, Eastern was not under an obligation to maintain the System Board so that it could hear disputes of this sort.[2] Cf. Manning v. American Airlines, Inc., 221 F.Supp. 301 (S.D.N.Y. 1963), aff'd, 329 F.2d 32 (2d Cir.), cert. denied, 379 U.S. 817, 85 S.Ct. 33, 13 L. Ed.2d 29 (1964).

In summary, FEIA bases its appeal largely upon the theory that there were genuine issues of material facts relating to (1) the discharge of FEIA engineers and their replacement by ALPA pilots; (2) Eastern's refusal to bargain in good faith; and (3) Eastern's efforts to promote ALPA as the bargaining agent instead of FEIA. However, as the trial court found, "since the agreement between Eastern and FEIA was no longer in force, Eastern was under no obligation to re-employ all the strikers" (243 F.Supp. at 708). The court concluded that the "additional claims advanced by FEIA do not change the nature of the controversy as found by the Court of Appeals" to be one for noncurial treatment (p. 708). As to reinstatement and damages, it would follow, as the trial court held, that "since the Court is without jurisdiction of the subject matter, it is equally without jurisdiction to direct the reinstatement of the strikers or to award damages" (p. 708).

Although there may be interesting factual issues which FEIA might desire to explore, in view of the previous decisions they do not qualify as "material" facts. The trial court, therefore, was justified in deciding this case upon the motion for summary judgment "for lack of jurisdiction over the subject matter."

Affirmed.

2. International Ass'n of Machinists, etc. v. International Aircraft Services, 302 F.2d 808 (4th Cir. 1962), on which FEIA relies, is readily distinguishable. In that case, arising not under the Railway Labor Act but under the National Labor Relations Act, the court held that an employer could not avoid a duty to arbitrate grievances with a union on the grounds that the union, because of the employer's allegedly unlawful replacement of union members, no longer represented a majority of the work force. Apart from the obvious differences between the breadth of the arbitration clause there in question and the jurisdiction of the boards of adjustment under the Railway Labor Act, the union and the employer there had entered into a new collective bargaining agreement which was explicitly made retroactive to the termination date of the old agreement.