**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, an unincorporated labor organization, Plaintiff,**

**v.**

**REEVE ALEUTIAN AIRWAYS, INC., an Alaska corporation, Defendant.**

**Civ. No. A–158–69.**

United States District Court,
D. Alaska.

Aug. 16, 1971.

---

Robert H. Reynolds, Anchorage, Alaska, for plaintiff.

J. H. Shortell, Anchorage, Alaska, for defendant.

## MEMORANDUM OF DECISION AND ORDER

PLUMMER, Chief Judge.

On October 28, 1966, defendant airlines and plaintiff as the certified bargaining agent of certain employees of defendant, entered into a contract covering rates of pay, rules, and working conditions for mechanics and certain other personnel. The contract contained the following provision:

"This Agreement shall become effective November 1, 1966 and shall continue in full force and effect until April 1, 1968, and shall renew itself without change until each succeeding April 1st thereafter, unless written

notice of intended change is served in accordance with Section 6, Title 1, of The Railway Labor Act, as amended, by either party hereto at least sixty (60) days prior to April 1st in any year after 1967."

On January 30, 1968, the plaintiff, pursuant to Section 6, Title 1 of the Railway Labor Act, 45 U.S.C. § 156 (1954) and the above quoted section of the contract, served written notice of intent to change certain portions of the contract on defendant. Pursuant to the Railway Labor Act, plaintiff and defendant entered into direct negotiations and also into negotiations in conjunction with the Federal Mediator. The parties negotiated only on the changes requested by plaintiff, as defendant never gave notice of an intent to change any portion of the contract.

On September 11, 1968, the National Mediation Board (hereinafter referred to as the Board), made a proffer of arbitration which plaintiff declined to accept, as it had a right to do under 45 U.S.C.A. § 155 (1954). On September 18, the Board advised defendant that their services had terminated, at which time the parties entered into a 30-day cooling off period.

Pursuant to a vote of its membership, held on or about June 5, 1968, plaintiff struck defendant on October 19, 1968, the first day after the expiration of the 30-day cooling off period. On August 24, 1969, all strike activities ceased, despite the fact that no agreement had been reached on the proposed changes.

On September 25, 1969, an authorized representative of plaintiff notified defendant of the Union's position that the contract remained in full force and effect, and demanded that defendant adhere to Article XIX, pertaining to Union security and dues deduction provisions.

The matter is before the court on cross motions for summary judgment.[1] The sole issue presented is

1. Plaintiff's motion was filed July 22, 1970. At the court's suggestion defendant filed a cross motion on January 25,

1971. Of counsel for plaintiff in this matter is a Minnesota law firm. In the interim between the filing of plaintiff's

whether the Railway Labor Act, 45 U.S.C.A. § 151 et seq., has the effect of extending a collective bargaining agreement beyond the termination date specified in the agreement.

45 U.S.C.A. § 181 (1954) subjects common carriers to §§ 151, 152 and 154–163 of Title 45. Section 152 (Seventh) reads as follows:

> "Seventh. No carrier, its officers, or agents shall change the rates of pay, rules or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."

Section 156 provides for 30-day notice of intention to change provisions of the agreement and continues:

> "In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions *shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, * * *"* (Emphasis added.)

■ Under § 155, unless the parties agree to submit their differences to arbitration, the Board's function is terminated following the unsuccessful attempt at mediation. As a "final required action" the Board may attempt to induce the parties to arbitrate or recommend to the President that an emergency investigatory board be empaneled under 45 U.S.C.A. § 160 (1954). While the dispute is working its way through these stages, neither party may unilaterally alter the *status quo*. Detroit & Toledo Shore Line

R. Co. v. United Trans. Union, 396 U.S. 142, 149, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969); Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 378, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969).

Plaintiff contends that the overriding concern for labor-management peace in the common carrier industry requires this court to construe the Railway Labor Act as extending collective bargaining agreements, or at least such portions thereof as have not been opened for negotiation, beyond their term until a new agreement is reached. The only authority cited for this proposition is dictum contained in a footnote to Brotherhood of Rwy. & Steamship Clerks v. Florida E. C. L., 384 U.S. 238, 247 at n. 7, 86 S.Ct. 1420, 16 L.Ed.2d 501 (1966). In *Florida East Coast* the Supreme Court held that during a strike an employer subject to the Railway Labor Act can make only such unilateral changes as are strictly necessary to continue serving the public, and that the collective bargaining agreement remains the norm of management labor relations despite the strike. Plaintiff points to dictum which seems to indicate that after a strike the earlier collective bargaining agreement, except as modified by any new agreement of the parties, would again be fully in force. 384 U.S. at 238, n. 7, 86 S.Ct. 1420.

Although it is not entirely clear from the language of the opinion, it appears that the underlying collective bargaining agreement had not expired. Florida East Coast had not argued that the agreement had terminated, but only that it was suspended during the strike. *See* Florida East Coast Rwy. Co. v. Brotherhood of Railroad Trainmen, 336 F.2d 172 (5 Cir. 1964).

---

motion and the issuance of an order dated March 26, 1971, granting the defendant's unopposed motion, plaintiff's local counsel was appointed Judge of the Superior Court, Third Judicial District, State of Alaska. Plaintiff has moved for relief from the order of March 26, 1971, under

Rule 60(b), Federal Rules of Civil Procedure, citing difficulties in obtaining in-state counsel and consequent lack of communication with the local plaintiff during this period. The motion is unopposed and, for good cause shown, is hereby granted.

There is nothing in the Railway Labor Act that extends a contract beyond its termination date. 45 U.S.C.A. § 156 (1954) merely prohibits any unilateral changes in pay, rules, and working conditions until the statutory conciliation procedures have been exhausted and the 30-day mandatory waiting period has expired. The statutory conciliation procedures were fully complied with after the good offices of the Mediation Board had been unsuccessfully invoked, a proffer of arbitration had been declined, and the mandatory 30-day waiting period had expired. 45 U.S.C.A. § 155 (1954).

■ The terms of the agreement called for its termination on the first day of April following notice by *either* party of intended changes. It is irrelevant that defendant never served notice of any intended changes, and it is of no consequence that only portions of the contract were subject to negotiation. The contract expired by its own terms on April 1, 1968. The only effect of the Railway Labor Act was to prevent the defendant from making any unilateral changes in pay, rules, and working conditions until remedies under the Act had been exhausted on October 18, 1968.

In suits under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185 (1965), involving the National Labor Relations Act [2] (N.L.R.A.), contract termination provisions similar to the ones here in question have been held applicable where modification of the contract is requested by one of the parties. Baker v. Fleet Maintenance, Inc. 409 F.2d 551 (7th Cir. 1969); Proctor & Gamble Ind. Union v. Proctor & Gamble Mfg. Co., 312 F.2d 181 (2nd Cir. 1962), cert. den. 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963).

In East Bay U. of Mach., Local 1304, v. Fibreboard Paper Prod. Corp., 285 F. Supp. 282 (N.D.Cal.1968), aff'd 435 F.2d 556 (9th Cir. 1970), the court had before it a contract termination provision which was similar to the one in dispute. The court held that a notice of modification prevented automatic renewal of the agreement, despite the fact that the subject of the dispute was not at issue in the negotiations over the proposed changes.

In summary, the Railway Labor Act does not operate to extend the term of a contract. As a matter of law, the contract expired by its own terms on the first day of April following the plaintiff's notice of proposed modifications in the existing agreement, although defendant was obliged by the Railway Labor Act to maintain the status quo until the statutory mediation provisions had been exhausted.

■ While certain employee rights, such as pension and retirement benefits, may become vested, and hence may retain their vitality after the expiration of the union contract which created them, union security and dues check off provisions are matters of contract between the union and the employer and consequently do not survive the termination of the contract. Industrial Union of Marine & Shipbuilding Workers v. N. L. R. B., 320 F.2d 615, 619 (3d Cir. 1963), cert. den. Bethlehem Steel Co. v. N. L. R. B., 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472 (1964); Bethlehem Steel Co., 133 N.L. R.B. 1347 (1961); Standard Oil, 144 N.L.R.B. 520 (1963). *Cf.* N. L. R. B. v. International Union, United Automobile A. A. & Imp. Workers, 297 F.2d 272 (1st Cir. 1961).

Accordingly, it is hereby ordered:

2. Section 8(d) of the N.L.R.A., 29 U.S. C.A. § 158(d), contains provisions for a negotiation and cooling off period which parallel those of the Railway Labor Act. While analogies to the N.L.R.A. must be "drawn circumspectly," reference to established precedent under the N.L.R.A. may be used "to determine whether it [the conduct of the parties to a dispute under the R.L.A.] is within the general penumbra of conduct held protected under the Act or whether it is beyond the pale of any activity thought permissible." Brotherhood of Rwy. Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 383–384, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969).

1. Plaintiff's motion for relief from this court's order of March 26, 1971, is granted.

2. Plaintiff's motion for summary judgment is denied.

3. Defendant's motion for summary judgment is granted.