**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, an unincorporated labor organization, Plaintiff-Appellant,**

v.

**REEVE ALEUTIAN AIRWAYS, INC., an Alaska corporation, Defendant-Appellee.**

**No. 71–2684.**

United States Court of Appeals, Ninth Circuit.

Nov. 24, 1972.

Bernard Dunau (argued), Washington, D. C., Robert H. Reynolds, Anchorage, Alaska, Plato E. Papps, Washington, D. C., Willard L. Converse, St. Paul, Minn., for plaintiff-appellant.

J. H. Shortell, Jr. (argued), C. R. Kennelly, Anchorage, Alaska, Stephen C. Cowper, Fairbanks, Alaska, for defendant-appellee.

Before MERRILL, DUNIWAY, and TRASK, Circuit Judges.

MERRILL, Circuit Judge:

This case presents the question whether, once a major dispute (respecting certain proposed changes in working conditions as embodied in a collective bargaining agreement) has run its course pursuant to the Railway Labor Act (resulting in impasse and strike), and the agreement by its terms has come to an end, *other* changes in working conditions can, under the terms of the Act, unilaterally be imposed by the carrier.

The union contends that notwithstanding the fact that the agreement had expired by its terms, it nevertheless continued in force and effect by operation of the Act, and that no change from the working conditions status quo as it existed under the agreement can be imposed without complying with the procedures for settlement of major disputes established by the Act.

The District Court held against the union upon this proposition. International Ass'n of Machinists & Aerospace Workers v. Reeve Aleutian Airways, 330 F.Supp. 332 (D.Alaska 1971).

Appellant union is the certified representative of mechanics and related personnel employed by appellee company. The collective bargaining agreement between the parties provides:

"This agreement shall become effective November 1, 1966, and shall continue in full force and effect until April 1, 1968, and shall renew itself without change until each succeeding April 1st thereafter, unless written notice of intended change is served in accordance with Section 6, Title 1, of the Railway Labor Act, as amended, by either party hereto at least sixty (60) days prior to April 1st in any year after 1967."

On January 30, 1968, the union notified the company that it was "opening * * * the agreement for amendment and modification." Twenty changes were specified for negotiation. The company gave no notice of any intended change.

Negotiations followed between the company and the union, and on April 3, 1968, the company requested the services of the National Mediation Board. Bargaining continued with the assistance of a mediator of the Board without success. On September 11, 1968, the Board suggested arbitration, but the union declined. On September 18, 1968, the Board notified the parties of the termination of its mediatory efforts and informed them that they were required to maintain the status quo for thirty days thereafter. On October 19, 1968, having been unable to resolve their differences, the union called a strike against the company.

On September 24, 1969, the union terminated the strike. No agreement had been reached between the company and the union concerning changes or modifications in the contract. On September 25, 1969, the union wrote to the company notifying it that the strike had been discontinued, informing it that the agreement "continues to be in full force and effect," including its union security and dues deduction provisions, and requesting the company to honor the conditions of the agreement including those terms. On September 30, 1969, the company informed the union that it refused to honor the request made, since the company had consistently taken the position that there was no contract between it and the union following the termination date.

This action was brought by the union, seeking a declaratory judgment that the agreement continued in effect by operation of the Act save as to the provisions which had been subjected to the Act's procedures. The District Court, on motion of appellee, dismissed the complaint and this appeal followed. We affirm. The relevant provisions of the Act are set forth in the margin.[1]

The District Court held:

"The sole issue presented is whether the Railway Labor Act, 45 U.S.C.A. § 151 et seq., has the effect of extending a collective bargaining agreement beyond the termination date specified in the agreement. * * *

There is nothing in the Railway Labor Act which extends a contract beyond its termination date. 45 U.S.C.A. § 156 (1954) merely prohibits any unilateral changes in pay, rules, and working conditions until the statutory conciliation procedures have been exhausted and the 30-day mandatory waiting period has expired. The statutory conciliation procedures were fully complied with after the good offices of the Mediation Board had been unsuccessfully invoked, a proffer of arbitration had been declined, and the mandatory 30-day waiting period had expired. 45 U.S.C.A. § 155 (1954).

The terms of the agreement called for its termination on the first day of

---

1. § 2 Seventh of the Act, 45 U.S.C. § 152 Seventh, provides:

"No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."

§ 6 of the Act, 45 U.S.C. § 156, provides:

"*Procedure in changing rates of pay, rules and working conditions*

Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board."

April following notice by *either* party of intended changes. It is irrelevant that defendant [Company] never served notice of any intended changes, and it is of no consequence that only portions of the contract were subject to negotiation. The contract expired by its own terms on April 1, 1968. The only effect of the Railway Labor Act was to prevent the defendant from making any unilateral changes in pay, rules, and working conditions until remedies under the Act had been exhausted on October 18, 1968." 330 F.Supp. at 333–35.

■ We agree with the District Court's construction of the Act. It is the provision of § 6 to the effect that "rates of pay, rules, or working conditions shall not be altered" upon which the union relies and the construction of which is here brought in question.

The status quo, thus frozen, applies to working conditions whether or not they are embodied in agreements. Detroit & Toledo Shoreline RR. Co. v. United Transportation Union, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969). From this the union concludes that any proposed change in status quo, whether or not embodied in an agreement, must undergo the statutory procedure of notice, negotiation and mediation.

■ But this is not what the Act says. The Act is concerned with procedures to be followed respecting proposed *changes in agreements*. Once a change has been noticed, the status quo provision of § 6 comes into play. It serves to freeze conditions, whether or not they are the subject of agreement, but it does not come into play until a proposed change in agreement has been noticed.

Cases upon which the union relies do not support its contentions.

*Detroit & Toledo* dealt with a unilateral change imposed by the carrier during the status quo period. The same is true of Manning v. American Air Lines, Inc., 329 F.2d 32 (2d Cir.), cert. denied, 379 U.S. 817, 85 S.Ct. 33, 13 L.Ed.2d 29 (1964). Brotherhood of Railway and Steamship Clerks v. Florida East Coast Ry. Co., 384 U.S. 238, 86 S.Ct. 1420, 16 L.Ed.2d 501 (1966), dealt with a contract that had no termination date and that continued in force until a new contract had been reached. The question there was whether the contract continued in effect during the course of a strike. It was held that the strike did not serve to terminate the contract. Here, however, it is not the strike but the contract terms themselves that have brought the contract to an end.

Our case is similar to Flight Engineers Int'l Ass'n v. Eastern Air Lines, Inc., 359 F.2d 303 (2d Cir. 1966).[2]

Judgment affirmed.

---

2. There the court stated (359 F.2d at 310):

"The collective bargaining agreement between Eastern and FEIA was signed on December 31, 1958. By its terms, it was to continue in force until April 1, 1960, renewable thereafter on a yearly basis until notice of a desire to change the agreement was served by either party on the other prior to April 1st of any year. Such a notice was sent by FEIA on February 8, 1960. Negotiations between the parties continued intermittently until February 1962, and were followed by the appointment of a presidential emergency board under Section 10 of the Act. The Board filed its report to the President on May 1, 1962, and the freezing of the situation which had been caused by the appointment of the emergency board ended thirty days later. After June 1, 1962, the contract was no longer in effect and the union was free to strike. [Authorities] Unlike the collective bargaining agreement considered in Manning v. American Airlines, Inc., 329 F.2d 32 (2d Cir.) cert. denied, 379 U.S. 817, 85 S.Ct. 33, 13 L.Ed.2d 29 (1964), the status quo provisions of the Railway Labor Act had ceased to operate. Nor does FEIA suggest the existence of any conduct on the part of both parties which could serve as the basis for an argument that the parties had agreed to keep the former contract in effect although it was extinct by its own terms. The time for economic warfare had arrived, and the battle was not slow in coming."